# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND



USDC- BALTIMORE
'23 JUN 20 AM 10:47

---

Deborah Morris, Pro Se

Arnell Mason, Pro Se

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

Memorial Development Partners, LP.-Owner

Somerset Development Co.LLC -Owner

Habitat America, LLC - Regional Management & Site Management

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 23 CV 1641

*(to be filled in by the Clerk's Office)*

Jury Trial:   ■ Yes   □ No
*(check one)*

## I. THE PARTIES TO THIS COMPLAINT

### A. The Plaintiffs

| | |
|---|---|
| Name | Deborah Morris-Pro Se |
| Street Address | 301 McMechen St. Apt.814 |
| City and County | Baltimore  - Baltimore City |
| State and Zip Code | Maryland 21217 |
| Telephone Number | (302)298-4253 |
| E-mail Address | deborahm404@gmail.com |

| | |
|---|---|
| Name | Arnell Mason - Pro Se |
| Street Address | 301 McMechen St. Apt.712 |
| City and County | Baltimore - Baltimore City |
| State and Zip Code | Maryland, 21217 |
| Telephone Number | (410)905-4624 |
| E-mail Address | masonarnell810@gmail.com |

**B.     The Defendants**

| | |
|---|---|
| Name | Memorial Development Partners, LP - Owner |
| Street Address | 5101 Wisconsin Ave. NW Suite 410 |
| City and County | Washington |
| State and Zip code | D.C. 20016 |

| | |
|---|---|
| Name | Somerset Development Company, LLC -Owner |
| Street Address | 5101 Wisconsin Ave. NW Suite 410 |
| City and County | Washington |
| State and Zip Code | D.C. 20016 |

| | |
|---|---|
| Telephone Number | (202)363-2090 |
| E-mail Address | |

### AND OWNERS MANAGEMENT FOR BUILDING

| | |
|---|---|
| Name | Habitat America, LLC - Management Company Regional Office |
| Street Address | 180 Admiral Cochrane Dr. Suite 200 |
| City and County | Annapolis |
| State and Zip Code | Maryland 21401 |
| Telephone Number | (443)716-2550 |
| E-mail Address | |

| | |
|---|---|
| Name | Linden Park Apartments a/k/a Memorial Apartments Management on site Habitat America, LLC |
| Street Address | 301 McMechen Street |
| City and County | Baltimore - Baltimore City |
| State and Zip Code | Maryland 21217 |
| Telephone Number. | (410)523-0013 |
| E-mail | assistant468@habitatamerica.com |

*Point of reference- Linden Park Apartments a/k/a Memorial Apartments
                     referred to as Apartment Building per this complaint.

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

■ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

See within body of complaint

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

    a. If the plaintiff is an individual

        The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

4

## PARTIES

C.      Plaintiff - Deborah Morris a resident/tenant in Linden Park Apartments a/k/a Memorial Apartments - Apartment number 814 who lives alone. Relocating into Apartment Building since November 2021 - after moving from home of Daughter upon being assaulted by Daughter and Granddaughter. Plaintiff is 72 years old retired Business Owner and City of Philadelphia Protection Children and Adult Court Liaison/Advocate, Investigator Worker and Social Worker. Plaintiff currently Advocates for Seniors Rights, Disabled Rights and Services.

D.      Plaintiff - Arnell Mason a resident/tenant in Linden Park Apartments a/k/a Memorial Apartments - Apartment number 712 who lives alone. Plaintiffs has been a resident for little over 21 years. Plaintiff is 74 years old retired Janitorial Service Owner retired shortly before having had Liver transplant in 2015. Plaintiff is active in community services and has been before having had Liver transplant in 2015. Plaintiff is active in community services within the apartment and has served as the Sergeant of Arms for (as referred to)Linden Park Apartments Tenants Association for the last year and half.

E.      Defendants -Memorial Development Partners, LP - Owner and Somerset Development Company, LLC -Owner of the property relevant to this complaint.

F.      Defendants - Habitat America, LLC - Contracted Management Company of the property relevant to this complaint.      5

II.     **BASIS FOR JURISDICTION IS A FEDERAL QUESTION**

    A.     All events giving rise to this Complaint occurred in Baltimore City Maryland.

    B.     Individual Plaintiffs all reside in Baltimore City Maryland.

    C.     Defendants are the owners/landlords and property manager, respectfully, of the property located at 301 McMechen Street Baltimore City Maryland.

    D.     Defendants conduct regular business in Washington D.C. And  Baltimore City Maryland. Initial Complaint Filing March 24, 2022 Circuit Court of Maryland Civil Division that was denied for was incorrectly listed as landlord tenant dispute and not Constitutional Question. Maryland Circuit Court determined under Landlords rights Defendants  "Personal jurisdiction" home State to be Washington D.C. in which the company maintains its principal place of business case had Jurisdiction.

    E.     For the convenience of the Plaintiffs and the witnesses. All of this case matters took place in Maryland which Plaintiffs are currently residing in Baltimore City where the facts of our complaint are established, thereby, this is the judicial district in which a substantial portion of the events giving rise to Plaintiffs claims occurred.

    F.     Federal question jurisdiction. Plaintiffs case rise under the U.S. Constitution and

6

Federal Statutes. Upon Plaintiffs discovery of evidence it has become clear that our case is one

of Plaintiffs Civil Rights and not one merely of a Landlords tenants depute.

     G.     All Governmental, legal and public materials and documentations applicable to

Plaintiffs complaints were done in Maryland.

     H.     Lack of personal jurisdiction over parties, the State Court would likely not be

able to exercise personal jurisdiction over the Defendants even though it does have some subject

matter jurisdiction thus limiting the remedies available to Plaintiffs.

     I.     Plaintiffs case is more than $75,000.00

     J.     Plaintiffs filing in this Court was not made in bad faith or with any intent to

cause undue expense to any of the parties or the Court.

## III.     STATEMENT OF CLAIMS

     Plaintiffs Deborah Morris and Arnell Mason (Tenants) bring this lawsuit against

Defendants Memorial Development Partners, LP (Owner), Somerset Development Company,

LLC (Owner); and Habitat America, LLC (Property Manager of relevant property) (collectively,

"Defendants") for the suppression of Plaintiff Constitutional Rights by showing how the building

owners and Managements in doings so are actually violating Plaintiffs Civil and Housing Rights

under the Laws.

     Plaintiffs will show  Defendant (owners) willfully not completely renovating this

building to a safe and healthy space has trapped Plaintiffs and renters in conditions that teeter on imminent dangerous situations. Defendants willful act continues with their failure to put all new buildings critical systems in this building along with intentionally neglecting to replace the deteriorating/damaged original older building critical systems ( i.e. electrical, HVAC, security, life safety, lighting, elevators, utilities, telecom, and energy management which are dependent on each other to operate) thereby placing Plaintiffs and renters Health and Safety at extreme risk.

Defendants ongoing affirm under penalty of perjury [by signing of required legal documents when receiving licenses, funding, financial Tax Credits from Federal, State and Local Governments and their entities] that 301 McMechen St., Baltimore, Maryland 21217 building to and its units to be Safe and in compliance with All Pertinent Statues, Regulations and Laws to rent, such affirmations Plaintiffs case will show not to be true. Defendants in an effort to suppress and to silence Plaintiffs numerous complaints directly to Government Departments of the enormous hazardous health and safety conditions in Plaintiffs unit, Common areas and with the critical buildings systems for which Defendants have neglected to take care of, per their responsibilities to do so- has  instead forged continuous retaliatory actions against Plaintiffs trying to force us out of our units and the building to keep secret their underhanded dealings.

It is illegal and morally repugnant for these slumlords and developers to subject us residents to dangerous and unlawful conditions to live in or attempt to force us out of our homes if we complain about the conditions. Plaintiffs unwavering fight is that we put a halt to this Ponzi Scheme by the Defendants of stuffing their profits pockets on the Souls of us Elderly and Disabled Citizens in this Building.   8

Further Plaintiffs complaint have strong underlying implications of Elected Officials and Governmental Bodies wrong doing intermingling in this case matters. Plus systemic problems that were not brought to question by any Bodies on Local, State or Federal levels of unchecked/ non accountability huge sums of monies Defendants have gotten for allegedly renovations of this building that was never done and the amenities that are supposed to be within the building.

Complaint/Case presents as complex matters involving both Maryland State Laws and U.S. Federal Laws:

Federal Statutes questions in this Complaint include;

{18 USC: Chapter 47:1010 Fraud and False Statements, 18 USC:1341, 42 USC:3601-3619, 42 USC:2000d, 42 USC:1437, 42 USC:12101, 42 USC: 1437f, 42 USC: 8013, 12 USC: 1701q, 24 USC: 5.100, 5 USC:552, 31 USC: 3729} {29-Vol 18-Sec. 1926-11}

## HISTORICAL FACTS TO CLAIMS

1. At the beginning of the 20th century, white residents of Bolton Hill began to fear the expanding African-American community to the west of the neighborhood, eventually leading to white flight. The Mount Royal Improvement Association (MRIA) was established in 1928 and pushed for covenants against African-American residency in the neighborhood. The associated boasted that Bolton hill was a "protected area" and claimed that "the greatest achievement of the Mount Royal Improvement Association has been the subjecting of the property in its area to a restriction for white occupancy only." By the mid-20th century, however, many Bolton Hill residents moved to the suburbs for modern homes with yards, and in the early 1960s most of the Jewish institutions had moved to the northwest suburbs.

In the early 1960s, federal urban renewal funds were used to demolish houses on the

western edge of the neighborhood, which were considered "slums" and targeted for

"stabilization." Several large new developments were built in their place. In 1967, Bolton Hill

became a Baltimore City historic district, and in 1971 it was placed on the National Register of

Historic Places. As a result, the majority of the neighborhood was largely preserved.

In 2018, the community association changed its name from Mount Royal Improvement

Association to the Bolton Hill Community Association; this was to abandon any connection with

its origins in racial segregation and to be more representative of its location and diverse

community.

2.      When Memorial Apartments (condominiums) aka Linden Park Apartments was

originally built  by  Private Owners  and Developers this property was built

for the affluent white individuals.  During that period of time Historical Bolton Hill

section of Baltimore City Maryland was majority white area with only a few African-Americans

living in small alley houses or within large houses as servants of wealthy homeowners. The

building had amenities rarely found in other parts of Baltimore City including an outside area

designated  as a park with some very old trees, easy Metro access, Shopping Center centrally

located across the street, window views that will allow one to have  Panoramic views of the City

for area sets up on a Hill in one of Baltimore's premier neighborhoods.

3.      Memorial Development Partners, LP (Owners) =Memorial Episcopal Church

historical archives documents the days when the building was a social gathering spot for

residents and community. Neighbors spent time having meals in the dinning room, socializing

within the community room and just enjoying social events, parties and different music

entertainment right in the building. With the high end building amenities so was the high income

the  received Home Owners Association fees from people  that could afford it.

4.      The Memorial Apartments Corporation (MAC) was incorporated in 1964 {Prior

to Civil Rights Laws} to construct and operate Memorial Apartments, a HUD 202 {Grant

funding paying of all cost for the Building/Construction of this building i.e. No loan/mortgage as

result} providing housing to affluent  white seniors in Bolton Hill in Baltimore, Maryland.

Memorial Apartments built/constructed in the early 1960's with all asbestos materials, all lead

materials and all lead piping throughout this new Constructed building before national health

problems identified those materials as health issues. With Laws changing around Civil Rights

some whites chose to move out of Memorial Apartments (selling for very small price or donating

their Condo back to Memorial Episcopal Church) leaving the building to fall on

disrepair as a result of lose of  those profits incomes generated from the fees not coming. In

2012, MAC partnered with Somerset Development Company, LLC (Somerset) to redevelop

Memorial Apartments after years of deferred maintenance and deteriorating conditions in the

building, but, Housing Laws specifying certain requirements upon redeveloping Multi-Family,

Senior and Disabled Building built prior to 1978 had to be adhered to for the health and safety of

a rental  property . MAC and Somerset assembled financing using 4% Low Income Housing

Tax Credits, a new FHA 221(d)4 Mortgage, Partners for The Common Good and along with 10

other sources of financing to an amount of $54M allegedly to complete the $26M renovation cost

of  this building  Memorial Apartments (condominiums owned to be rental units), that is

11

Marketed as Linden Park Apartments. This money gotten was market to funders for rehabilitation and renovations to transformed this building into a state of the art independent senior living building offering a substantial set of building supportive housing services (i.e. Provisions of services [meals services adequate to met nutritional need, housekeeping aids, personal assistance, transportation, health - related services, providing consumer education and such other services as deemed essential for independent], Staff for Coordination of Services and a full time Service Coordinator) to enable Plaintiffs and other elderly tenants to live with dignity and independence. In addition common area, barber and beauty center, solarium, game room, an outdoor patio and community gardens as well a robust program of resident activities. For this to happen Memorial Episcopal Church (Original Owners of building)/MAC (Memorial Development - Non Profit) was solicited by Somerset Development ( For Profit) to by a partnership within Project with the conditions Memorial Episcopal Church/Memorial Apartments share of the property's annual cash flow to fund the property's resident services program to the same standard of original intent.

5.      Memorial Development Partners, LP (i.e. MAC =Memorial Episcopal Church = Non-Profit side of this Partnership) and Somerset Development is the Strict Profit side of this Partnership in joining together to make a = Hybrid Company.

Habitat America, LLC is the Contracted Management Company of the property that has no oversight.

6.      The Civil Rights Act of 1964 is a landmark law to discard discrimination based on race, gender, religion, sex, national origin, and later sexual orientation and gender identity

through legal means. At this time, racial deed restrictions on housing were legally removed and banned, which was an important step for Desegregation in the United States. However redlining still existed to present the unequal real estate transaction for many ethnic minorities. Even though segregation was explicitly illegal, discrimination under urban planning context has been deep-rooted.

As a result, Plaintiffs receiving the benefit of federal subsidized housing, being elderly/ disabled, Black and Middle Class are the victims of financial insecurity, privacy violations, poor living conditions, abuse, neglect, an ever-present threat of eviction, systemic racism and being used as chess pawns in a Sophisticated Pronzi scheme by the Defendants to increase their profit lines.

["The problem of the twentieth century is the problem of the color line."
— W.E.B. DuBois, The Souls of Black Folk

"It is a peculiar sensation, this double-consciousness, this sense of always looking at one's self through the eyes of others, of measuring one's soul by the tape of a world that looks on in amused contempt and pity. One ever feels his two-ness,—an American, a Negro; two souls, two thoughts, two unreconciled strivings; two warring ideals in one dark body, whose dogged strength alone keeps it from being torn asunder.

The history of the American Negro is the history of this strife — this longing to attain self-conscious manhood, to merge his double self into a better and truer self. In this merging he wishes neither of the older selves to be lost. He does not wish to Africanize America, for America has too much to teach the world and Africa. He wouldn't bleach his Negro blood in a flood of white Americanism, for he knows that Negro blood has a message for the world. He simply wishes to make it possible for a man to be both a Negro and an American without being cursed and spit upon by his fellows, without having the doors of opportunity closed roughly in his face."

"Perhaps the most extraordinary characteristic of current America is the attempt to reduce life to buying and selling. Life is not love unless love is sex and bought and sold. Life is not knowledge

13

save knowledge of technique, of science for destruction. Life is not beauty except beauty for sale. Life is not art unless its price is high and it is sold for profit. All life is production for profit, and for what is profit but for buying and selling again?" ]

The Problem of the twenty first century is the problem of the color Wall

- Deborah Morris and Arnell Mason, Our Souls are Still under a Veil thou lifting our voices for inclusion, safe and healthy place to call our homes, justice, relief and Peace.

    7.    Memorial Apartments (Condominiums) aka Linden Park Apartments original/

current owners and managers of this building houses 300+ tenants of this 266 unit 12 story 85%

Black, Seniors and Disabled complex the Opposite of "comfortable living". The oasis Memorial

Apartments (condominiums ) aka Linden Park Apartments was -is now a minefield of health and

safety problems. Plaintiffs and other renters , who are Seniors with disabilities, now fear for our

safety because anyone from the outside can easily enter the Property. Once inside the building,

Plaintiffs and other renters regularly face elevator outages, doors opening before level to floors,

doors not opening. The carpets in common area having stains and never power cleaned, ceiling

panels and walls in common area have stains from regular water damages. Plaintiffs and renters

suffer within our units that have poor air quality due to mold, filthy air vents and spew white

dust.

Heating and cooling problems that requires Plaintiffs often to supplement with space heater and

fans. The main kitchen area that once useable served as a place that Plaintiffs and other renters

could commune together for meals and social activities Neglectfully shut down because of mold

throughout that area, broken/old/filthy appliances, Stacked with debris and often flooded from

pipe breakages blocking should have never pass or licensed by local Department of License and

Inspection with approval for use. But for the complicity non properly qualified Housing

14

Authority inspectors and along with the department's shortage the Housing Authority just rubber stamped building a license upon completion of its renewal application and the payment of small fee.

8.      Pipes throughout building frequently breakages causing flooding, water damages to ceiling panels/ walls/ floors and blacken standing water to various areas of the building including in fire exit areas, rental units , kitchen area and system areas. Standing Water damaged ceiling panels in common areas throughout building have caused  mold that is visible on panels and leaving panels sagging often some have fallen. Water in Plaintiffs units when first running  most times is a dark gray color then after a period of time running turns light gray. Water in Plaintiffs units has been reported to be dark brown when running on several occasions.

9.      Plaintiffs  units have unfinished and exposed original wallboards that are known to have asbestos. Plaintiffs units have white particles that circulates and rest on floors/furniture/kitchen/clothing surfaces. Units have no fresh air ventilation systems except opening windows therefore between the dust from vents and white particles should windows not be opened Plaintiffs has had breathing difficulties and nasal allergies triggered.

10.      Building critical systems rooms have mold covering walls and other parts of the room. Major systems Critical to the safety of the building have serious problems lingering from patched up workmanship to old systems falling apart. These critical systems being push to their extremes for many parts are non-functional or unsafe.

11.      Building has severe mice and pest infestation.

15

12.     Defendants have been left to neglect  Plaintiffs health and safety concerns within

our units and building  by intentionally not bringing the unit building in compliance

with Local, State and Federal Laws for lack of HUD main structural breakdowns. These flawed

systemic problems that Undoubtedly  affects the everyday lives of Plaintiffs are HUD lack of a

functioning accountability and oversight system for the Defendants private property managers

who carry out the housing programs Plaintiffs are under.  Defendants property managers have

deep access to renters private information and the power to make decisions of enormous

consequence. HUD was originally responsible for monitoring property managers' behavior and

ensuring regulatory compliance to protect renters from abuse.

However, HUD has contracted out that responsibility to public housing agencies (PHAs),

many of whom have then further contracted it out to private service providers (PSPs) of which

Baltimore is one.This system has proved wholly ineffective at actually policing Defendants

noncompliance. As a result, Defendant abuse is endemic in this HUD -Project-Based housing

(specifically for the elderly and disabled )Plaintiffs suffer the consequences in myriad ways,

from overpaying hundreds of dollars of rents or costs to facing improper evictions.

HUD failure to enforce renters' rights and services are particularly egregious in this

elderly and disabled subsidy program that is designed to touch and control almost every aspect of

Plaintiffs  and other renters financial lives that were established to afford elderly and disabled

the freedom to live (in our building )independently not to become victims of  schemes.

16

13.    Defendants falsely applied and received funds that was to have renovated Memorial Apartments (condominiums) built in 1964 with high unsafe materials promising that it "is now state of the art" building. Defendants falsely advertise and markets unavailable services and amenities. Defendants falsely advertise and market entire building as handicap accessible. Defendants purposely keep hidden from Plaintiffs and renters the Ownership of Building and Contractual Management contact information to covert any legal/emergency/serious complaints of the building problems/safety and disputes with staff  so to abdicate them to nothing more than a concern paper that must be given to concierge (not directly to Defendant site Manager) to be addressed or not addressed by onsite Defendants.

Defendants Site manager has lied to Local Police, local Courts, Government officials around issues that threaten the health and safety to Plaintiffs and renters to cover up for their failures to give us our freedom from danger, fear and anxiety.

14.    Defendants received Federal, Local and Private funding supposedly to totally renovate this (Condominium) building with their Promise the contractors that were doing the renovations were reputable and known to Defendants to those funders/investors. Plaintiffs has called to question in all complaints to Defendants the original contractors shoddy work in units and in other areas of the building that failed to seal asbestos area, replace major systems or remove Hazardous substance Responsibly therefore leaving Plaintiffs health and safety dangling

17

in the course of our living here.

Further with no oversight or compliance from Baltimore City, State of Maryland, as well

from HUD, work within this building that was to have been done at time of its' renovation was

never done according to HUD requirements. Defendants funding received [ Grants & FHA

Loans] required the renovations of this building adhere to HUD Guidelines Specifically for Multi

Family elderly rentals units that outline explicit building areas to be addressed and how

renovations must be safely done in those areas according HUD guidelines to ensure the health,

safety of all also will accommodate the tenants needs for which are being housed in the building.

Defendants not renovating this building for rental per required by HUD regulations also ADA

Laws has plagued our building with ongoing safety, health, non accessibility problems

for which Plaintiffs and renters complaints to Defendants and City Of Baltimore Housing

Authority shows non accommodating the needs of the renters living here.

         * Note this was Plaintiffs filed complaint that this Inspector failed to speak
to us to view Plaintiffs Unit for Problems. This complaint Plaintiffs  filed against Memorial
Apartments and this Inspector Listed "Linden Park Apartments" not Plaintiffs named building.






The  water pipes breaking citation above is one of many that nothing from this department has done except issue citations on standing water. No inspection of systems for damage or deterioration.

This Email Address to Commission about All the major complaints regarding 301 McMechen St. plaintiffs have filed with that agency that has not been taken seriously i.e. nothing done.

This problem is so serious per OIG:



In addition to Defendant(Owners) private rehab/renovation - Contractors shoddy  and

undone work  in this building, Defendant (Owners) of building has left the management/

operations of building to (Defendants) Contracted private property Managers that are

categorically exclusively unchecked. Plaintiffs case spell out the fact  Defendant /

owners has contracted Defendants/property management that has put only one site manager in

this building 300 + Seniors purposely to subjugate Plaintiffs and other renters as a means of

controlling any and all complaints about our living conditions. HUD's dual-delegation system

relationship with the City of Baltimore allows this kind of management system to operate for

19

none of these Governmental Bodies have compliance requirements or oversight requirements for

management of Private Sector rental Housing receiving Government funding/assistance or Tax

Credits.With no required police of this building property management practices by HUD

compound with that of State and Local authorities having no regulatory Authority over this

private contracted property management,  Plaintiffs and other renters in this building

are subject to ongoing untold abuse of our rights , neglect of  complaints and outright ignored.

More frightening is the fact the Private funders of this building could care less about

the operations of this building and its practices, procedures and any management of the

internal operations of Plaintiffs  building and the lives within this building. The Private funders

sole stakeholder relationship to the Plaintiffs and renters that live in our building is their Profit

line promise and financial returns from financing Defendant to rehab and Renovate this building

- their liability ends at - "How much will their Financial gains  be from this Deal".

15.    Plaintiffs brings this action action against Defendants - sophisticated real estate

Hybrid Development entities and professionals that owns, operates and leases nearly 1200

rental units in multiple building  across Baltimore Maryland and Washington D.C.

Defendants has perpetuated the renovation scheme of this building finished housing would be a

State of Arts building with new critical systems for which Defendants did received Federal

Housing funds for this to have happened.   20

Defendant/ Owner (Somerset) along with Defendant/Owner (Memorial) marketing to all funders set up this building Ponzi scheme  was designed when partnering to use this older building  that had deteriorated ( but fully occupied) to a point of being Inhabitable and about to be shut down do to identified health and safety problems of the Unquestionable exposure of asbestos, lead, mold along with other major systems failures regularly, therefore, would  leave these folks with no where to move.

Defendants as a Hybrid Company i.e. Non Profit and For Profit company sought and received monies from grants on their non profit side and on the For Profit side by private financial Institutions/investors a mixture of finances totaling more than $50M combined with receiving monthly rents for more than 280 units  -Financially promising renovations of this building and the continuance of same and additional  Supportive Services to accommodate the needs of this elderly and disabled population  to live independently in the building. Instead with no oversight or accountability from HUD this has been a reneged Promise by Defendants, but, Defendant  glamorous fake Linden Park Apartments is without doubt  not their real Memorial Apartments ( condominiums) that Plaintiffs and other renters hold a lease to and live in.

Plaintiffs pay rent to Memorial Apartments that have NO Services , less staff, fewer Units and same conditions in this building exist as before receiving money to correct those health and safety problem just more intense. All monies as requested in behalf of Memorial

21

Apartments (condominiums with no monies requested under Linden Park apartments) coming

from any grant and financial sources go directly to Defendants and its' Hybrid Company as well

all the rents from this building to use as they choose to.

16.     Defendants deceptive marketing of this building  Intentionally targets the most

vulnerable populations in need of affordable rental housing of  i.e. Aged and disabled.

Aged and disabled are Statistically largest populations in need of affordable housing in Baltimore

who are known to have stable continuous income sources. Baltimore Housing Department have

no plans to be in the business of development or building much needed housing in this city to

rent . Rather its' dysfunctional Housing Department have allowed outside/Absentee Private

developers (Defendants) come into this City take  control of its' housing market saying  -

"because it is more economically feasible in doing this . Baltimore Housing Authorities dealing

in this manner has abdicated their regulatory/complying controls to the outside/absentee Private


Developers (Defendants) to do as they please  - here again no Accountability by that housing

outside/absentee Private Owner (Defendants)  being checked for safety and health problems

within Plaintiffs units or building.

17.     Nevertheless, Defendants burden Plaintiffs with discriminatory regimes that shuts

us towards eviction from the moment we applied for our units . Specifically the signed

leases and other legal documents signed by Plaintiffs for our units are very difficult to

understand and decipher because of being shield with vague language focusing primarily about

the overall Requirements of Plaintiffs (renters) in the up keep of ones' units . Nothing in the

lease identifying Defendants contact information, standard policy and procedures in case of

emergencies within building along with Point person to insure Plaintiffs safety, maintenance

procedures for units/building, right of Plaintiffs to review/know what is in our file and how

to get incorrect or disputed information removed, annual accounting of Plaintiffs security

deposits status and interest if any and procedures for Renters Dispute resolutions.

18.     Plaintiffs seek injunctive relief, Civil Penalties, Disgorgement cost to Prescribe

to their oath to make Plaintiffs building Safe, Heathy, ADA Accommodations,  new /more

elevators, procedures/policies for the  deter of Defendants engaging in discriminatory practices,

unfair housing practices, unfair trade practices, due what Defendants  promised to make the

building "State of the Art" that is good and Safe for all present and future renters

living here and to keep the rents affordable for the very low and low seniors to live Comfortably

 in a safe, joyful and peaceful environment i.e renovate buildings with all new critical systems,

all new infrastructure of building materials and technology.

# SYSTEMIC PARADIGM GAPS AND FLAWS FACTS OF CLAIMS DUE TO LACK OF OVERSIGHT

## Housing Assistance and the Rental Housing Market for the Elderly and Disabled in Baltimore Maryland

19.     The ability to access affordable rental housing for the Elderly and Disabled nationally is a major problem for the housing market is driven by Private Owners and their focus is not on Social need but profits.

20.     Baltimore Maryland the need for decent affordable rental housing is higher than other parts of the state because of the large number of aging population [ who barely are able to have roof over their heads and food to eat without having to have a part-time job or side income] , large numbers of (should be condemned)unsafe vacate housing, no businesses/banks, along with this cities crime rate swaying non predatory housing market from the City to the Counties.

21.     Housing situation here in Baltimore is prime market for predatory housing investors coming into Baltimore  from outside of the State acquiring massive deteriorated housing stock for the sole purpose of making a profit-nothing more. These absentee housing owners are not stakeholders in the City of Baltimore their stakeholder anchored firmly to their companies/businesses out of the state.

With the flood gates of predatory  outside ownerships in this city,  it has created enormous gerrymandering ways for them getting Federal/State/City and Private monies to buy

24

these properties without doubt permitting them to bypass  city, State and Federal laws when

it comes to the people Occupancy of  property. Defendants Hybrid structured Company and

business practices fraudulently gathering of monies amounting in the millions allegedly to make

this (Condominiums owned) into Rental units building safe, healthy, accommodating, to have

included the amenities to necessitate an independent living environment for the Elderly and

Disabled false claims has brought this claim by Plaintiffs.

22.     Plaintiffs Petition is to claim the entitlements due us under the Laws. Such Laws

has been stripped away, hidden behind walls built from ignorants and stupidity by those

caretakers given the duty to preserve them. Those caretaker bodies have been assigned the

responsibility of overseeing  all legislative entitlements that are used by those  for which they

were founded for - in Plaintiffs claims are centered within the Housing Laws of this Country.

23.     Somewhere through this Countries societal haste - people have become so

called sophisticated before being educated. Plaintiffs complaint poignantly is to address our basis

entitlements provided us under this Countries "Common Laws" [ derived from

custom (i.e. Needs) of  the Elderly and Disabled ]that has been denied Plaintiffs in the rentals of

Defendants property.

24.     Plaintiffs case involves two kinds of  funding Defendants gotten to allegedly

25

rehab and renovate Property at  Memorial Apartments(Condominiums), 301 McMechen St.

Baltimore MD:

    a. HUD Assistant Multifamily Properties Housing for the Elderly and Housing for

      Persons with Disabilities Program.

    b. HUD Federal Housing Administration Mortgage Insurance (FHA)-Multifamily

Housing Tax Credit Program.

    The United States Department of Housing and Urban  Development administers both

Programs.

    25.     Both of the Defendants Programs Funds receives from funding packets they

submitted to HUD requirements - in part  Defendants to include:

    I. Technical plans (Hazardous material surveys, architectural diagrams,

engineering plans , etc.)

    II.  Information (operation of this building i.e. policies, procedures, Protection of

Privacy,  )

    III.  Supportive Services

        a. Meal Services adequate to meet nutritional needs

        b. Housekeeping aid

        c. Personal Assistance

        d. Transportation     26

e. Health-Related services

f. Providing Consumer education

g. Such other services as deems essential for maintaining independent

h. Local Coordination of Services

i. Service Coordinator

justifying the monies received for this Building renovation (not rehab ) Allegedly so that

Plaintiffs and other renters could live in a safe environment while having supportive services that

would enable us to live with dignity and independence  while remaining in the community.

26.     Once Defendants received millions of dollars checks in hand all Memorial

Apartments (Condominiums) Plans shifted hands and so went Defendants HUD submitted Plans

for rental housing for elderly and disabled -with a new script of Profits into the new shifted

hands of aka Linden Park Apartments.

27.     Defendants marketing of "State Of Art" Renovations of Memorial Apartments to

lure  unsuspecting Plaintiffs to rent here and to remain here and enticed other Elderly renters and

consumers to do the same. This marketing campaign is and continues to be very profitable to

Defendants for the total cost to them for Rehabilitation -**NOT RENOVATIONS** - of

deteriorating Memorial Apartments (Condominiums) prices approximately $3,000,000.00.

28.     Defendants depressed Rehab of Memorial Apartments (Condominiums) converted

by contractors hired to:          27

I (a).  Break off and board up Asbestos wall boards, Wipe off  mold soaked areas then

Patch up, paint up,  and dress up the interior facade of the entire building to the give

Impressions of a brand new building.

(b). Check out the same major plumbing, electrical systems  for functionality and

maintenance requirements then slice them, spray seal them to keep them working.

( c) Other major systems that included the elevator system, water heaters, and ventilation

Checked out for operating and any parts needing to be repaired or replaced them.

(d) Rest of Renovations were grab bars in bathrooms, older appliances in the units

replaced with newer warehouses unsellable appliances (i.e. scratch and dent, outdated), vinyl

wood plank floors and other cosmetic items. All done to give the fake appearance of this building

had been totally renovated but in reality just a rehab Make over to cover up ( not sealed up or

removed)the hazardous health and safety problems that are still in this building.

II. Information (operation of this building i.e. policies, procedures, Protection of

Privacy ) =Defendants (Owners) Contractual of Defendants (Habitat America as

Management) to oversee.

(a) Contractual management oversight in building consists of "What ever Habitat

America Management says is it"  no discussion about decisions.

(b) Defendant (Habitat America Management) Authority given permission to

Eviction at will and to Remove Plaintiffs and other renters without allowing fair treatment.

(c ) Given Authority to subcontract services to other companies and allow them to access Plaintiffs Private Informations and Provide Property (Units) without consent to do so.

(d) Give authority for maintenance in Building, repairs in Building, Services in Building,  safety of building, Extermination in the building, staffing, anything that has to do with the operations and needs of this rental units of Elderly and Disabled Multifamily Building.

III.  Supportive Services

   a. Meal Services adequate to meet nutritional needs - none

   b. Housekeeping aid - none

   c. Personal Assistance - none

   d. Transportation - none

   e. Health-Related services -none

   f. Providing Consumer education - none

   g. Such other services as deems essential for maintaining independent -none

   h. Local Coordination of Services - none

29

i. Service Coordinator- Part Time for 300 + Elderly and Disabled Persons

29.　Memorial Apartments building conditions have continued to decline during Defendants (ownership and management) the property, which seriously threatens the Life, Health and Security of Plaintiffs and other renters . Documents showing that Housing Property contains hazardous materials were never followed and continued not followed when doing renovations or repairs to this property.  For Defendants intentionally not following the documents to secure those hazardous materials impacts the life, health and security of Plaintiffs and Elderly /Disabled renters ongoing. Ongoing life , health, safety and security of renters problems at the Property:

    a.  Cracked walls

    b. Serious Leaks and mold

    c. Peeling paint

    d. Broken heaters/air conditioner

    e. unsecured doors and no Telecom systems, or building security systems

    f.  Critical systems breakdown and failure

    g.  2 older elevators for 12 story buildings with 300 + elderly and disabled people with neither ADA accommodating/constantly breaking down. Elevators opens before level to floor, jerks and at time free fall to next floor and door may open little bit above the

30

floor level, doors open and close quickly not allowing entering and exiting causing

doors to close on people. Elevator override key keep locked in management office.

Know one in management are to use correctly. Fire department override key not

compatible to this older building elevators often EMT emergency and patient has

been tripped in elevator trying to get elevator doors open. Fire department has no

layout plans from Defendants to location of individuals.

30.      Building have No clear chain of Command during times of Emergency situation

or incidents to be followed by onsite Management, staff , Plaintiffs or renters should

circumstances arise. Defendants Apartment Building have no posting nor have provided written

organized information/Procedures for Plaintiffs, Residents, Visitors, and on site Management,

Employees to follow for unexpected Emergencies or incidents happening within Building.

31.      Sever Mice, Pest and Bug Infestation

32.      Water in Plaintiffs Units when first turned on runs Black or dark brown and

must run before turning light gray.

33.      Original older Boiler in building has gone out numerous times knocking out hot

water. When needing to repair with a part Plaintiffs must endure no hot water for long periods of

time before can find parts to repair this Old System. The Basement in building has dangerous

structural conditions that was never been completed with Building makeover. Mold throughout

31

building and under building installed makeover ceilings panel where water has accumulate

from leaks, or outside rain water coming in from not properly seal windows, roof, and doors

areas.

34.     Defendants' (Habitat America Management) are Unprofessional Property

Managers for which Defendants, (Owners Memorial Development and Somerset Development)

has given the control of oversight, compliance, operations, care, health, safety of Memorial

Apartments (Condominiums) aka Linden Park Apartments building for the management services

provided to Plaintiffs and the renters as Defendant (Habitat America Management) see fit:

(a) No Communication with Plaintiffs

(b) Not Responding to Plaintiffs

(c ) Not giving the Plaintiffs and renters reasonable means of dispute or grievance as

renters

(d) Class Discrimination of Plaintiffs and renters

(e) responsible for maintenance staff

(f) responsible for Supportive Housing Services

(g) responsible for independent contractual repairs/maintenance/services

(h) responsible for inspections of apartments, (i) responsible for inspection of building

(j) responsible for certifications and licensing of building

32

(k) responsible for collections and Disbursements of collected rents to Defendants

(Owners) Financial accounts

(l) responsible for regulating and development of policy/procedures/practices of staff

(m) responsible for Securing/documentation into/compliance of Plaintiffs/renters files/

records/private information,

(o) responsible for maintenance/upkeep in Plaintiffs units

(p) responsible for maintenance/upkeep of inside and outside of building

(q ) responsible for safety inside building and outside building area grounds.

35.    Defendants requires Plaintiffs and all renters units maintenance requests/

disputes Apartment Building complaints (i.e. Safety, conditions, security, disturbances,

incidence), complaints/disputes against site management or employees ALL to be submit on

ONE general Apartment Building Concern FORM (Not a Complaint Form) that is to be given to

front desk Concierge - fact Defendants has abrogation this responsible duty of Site management

to the Concierge to do this job of collecting and turning over Plaintiffs/renters Concerns Forms

for Building Maintenances to Supervisor of Maintenance to handle those units concerns

with those Concern Forms referencing Problems of any kind (Including site management,

employee, other tenants, and guess Problems) are Sorted out and turned over to site management

to resolve solely at their discretion without any further Avenues for redress. Defendants have No

33

uniform system or standard procedures on site to log in or time date when concerns or

complaints are turned in by Plaintiffs to Concierge or acknowledgement of Concerns/

Complaints being received by Defendants - nor when or if will been done/handled.  This

Procedural in-house process of handling legitimate complaints from Plaintiffs against Site

Management handling of serious incidents/emergencies and situations that Plaintiffs were

involved with but  there was NO Site Management present on site on any of occasions has

fostered a Biased Deceptive Complaint structure by the Defendants that has been used as

retaliatory and intimidation Measures towards and against Plaintiffs with no recourse for

Plaintiffs except the Courts.

## COUNT I

## DISCRIMINATION AND UNFAIR PRACTICES - HUD - Fair Housing Act, Americans with Disabilities Act, The Consumer Protection Procedures Act, Freedom Information Act (i.e. Right To Know Acts)

1. Supportive Housing for Persons with Disabilities (Section 811)

2. Supportive Housing for the Elderly (Section 202)

3. Defendants' Discriminatory Advertising, Defendants knew of their legal obligations not to Discriminate, Defendants' Misrepresented and Omissions regarding their Discriminatory Practices

4. Defendants refusal Plaintiffs access of information in files.

34

5. Defendants refusal of access of Chemical information to be used for pest control in apartments.

6. Unlawful Trade Practices in Violation of The Consumer Protection Procedures Act, Misrepresentation and Omission of the Consumer Protection Procedures Act

7. Class Discrimination

8. Under Civil rights laws Defendants have not taken reasonable steps to ensure meaningful access to programs and activities for Plaintiffs and residents with limited English proficiency, Technology Understanding/access and to ensure effective Communication with Plaintiffs, other Residents with disabilities through the provision Of appropriate auxiliary aids and services.

9. Defendants failed to take all reasonable steps necessary to provide a discrimination free Senior Housing environment, resulting in discrimination against Plaintiffs.

10. Defendants knew or should have known that Plaintiffs had been discriminated against and harassed on the basis of their "Right to know" and " Good  Samaritan ACT" yet Defendants failed to properly investigate  discrimination practices or accept Plaintiffs complaints about discrimination.

11. Defendants knew or should have known that Plaintiffs had been discriminated against on the basis of their " Right to Know" and "Good Samaritan ACT" yet Defendants failed to take immediate and appropriate corrective action or accept Complaints.

12. Defendants refuse to develop policies and procedures to resolve discrimination within Building operations and relationships between renters or employees v. Renters.

[ Dr. Martin L. King "I have a Dream - Aug. 28, 1963 - I have a dream that my four little children will one day live in a nation where they will not be judged by the color of their skin but by the content of their character. I have a dream today."]

Plaintiffs in 2023 are still dreaming of not being judged by the color of our skins.

## COUNT II

## BREACH OF THE WARRANTY OF HABITABILITY

1. Breach of Warranty of Habitability , Work conducted by outsourcing with no

   protection or cautionary measures in effect at all times.

   a. Note State of Maryland EPA Department that oversees Asbestos,

      Lead Complaints or Mold has NO AUTHORITY OR POWER OF

      ENFORCEMENT to make Owners or management of the building

      Comply with the removal, clearing of or the assurance safety measures

      have been implemented to protect the Plaintiffs or other renters in

      Building. This Department sole purpose is no more than check

      to see if building owners have a survey Plan - That's it.

   b. Responsibility for known Building with Lead, Asbestos, Mold Removal

      critical systems replacements had been left up to the building Owner duty to

      do or not due with no oversight from Baltimore Housing Department.

      Therefore should any removal or securing of hazardous materials, replacing

36

critical systems, maintenance/repairs in building or units that requires to be done had been left up to owners and management. This oversight failure lends itself to Defendants putting out unchecked  systemic documents/reports subscribing that all renovations were being done correctly ( i.e  per the only Building construction Plans and Survey Plans  that had to be developed per initial funding packages requirements submitted to Government funders/ Private investors that identified safely components in building that had to be done according to the prevailing regulations and laws that did not exist when building was built)  not to expose renter and the Public any risks of health, safety or dangers.

c.  Baltimore Maryland has no inspections, oversight and enforcement systems in place for this old buildings known to have health and safety problems. Such flaws in Baltimore Housing Authority leaves Plaintiffs living in this building,  as well its  Citizen living in other such buildings Lives encased in tombs of Asbestos, Lead and Mold threading throughout graveyards building for our human bodies to breath in fibrous minerals, chemicals elements and toxic fungi unknowingly. Such toxins time booms  can lead to metastasizing in the body forcing us folks out the death door way...

2. Defendant rehabbing of Memorial Apartments deception intent was just to spruce up the property looks only. Real intent of joining Partnership buy-in deal (from Somerset Development With Memorial Development ) included ownership of deteriorating Memorial Apartments (condominiums at a steal- this very profitable buildings ), a large plot of prime commercial land  on lot next to this Memorial Apartment, plus another vacant large commercial building done at a far low market price (in comparison to other real estate investments deals similar in profitability) then to do a quick low cost rehab to Memorial Apartments to increase its appreciation value -use it assembled assets ( that included vacant land and another vacant commercial building valued as venture capitals to increase profitability so to resell when it had no more use of the property. A process also known as flipping in  real estate investing exit strategy since rehabbing  leads to high-profit margins by increasing property value with little work done.

Defendants Breach of the Warranty of Habitability include within this building :

  a. Unresolved mold exposure , toxic mold exposure

  b. Asbestos exposure

  c. Non-functional and unsafe critical systems e.g. plumbing, elevators, flooring electrical, Heating/Air

  d. Unsanitary waste disposal shoot

38

e.  Major Water Leakage and flooding throughout buildings from older

deteriorating pipes throughout buildings that may cause structural

damage to the foundation of this building.

f.  Broken locks, lighting and improper safety guards throughout the building.

g.  No Telecom communications technology throughout apartment and building

for life safety and security of the Plaintiffs and tenants.

h.  Apartments and Common area of Building not totally accessible according

ADA guidelines.

i.  No Emergency Management Plans in Place or training for Staff or tenants

3.  Defendants intentionally false claims and willfully discriminates building to

have Supportive Services that would allow the Plaintiffs, Elderly and Disabled to reside in unit

and within buildings community independently- those of:

a. Meal Services adequate to meet nutritional needs - none

b. Housekeeping aid - none

c. Personal Assistance - none

d. Transportation - none

e. Health-Related services -none

f. Providing Consumer education - none

39

g. Such other services as deems essential for maintaining independent -none

h. Local Coordination of Services - none

i. Service Coordinator- Part Time for 300 + Elderly and Disabled Persons

 

Critical Systems Areas, Common Areas and some work in common areas after flooding by outside contractors with Seniors and public around

  

Plaintiff unit expose areas known to have asbestos. Mold regularly grows in this area.

 

40

  

## COUNT III.

## NEGLIGENCE

1. The abandonment of renovation works is an extremely important factor causing degradation of Memorial Apartments building. The effects of failure to repair the individual building elements presented can be divided into catastrophic, serious, significant, and insignificant.

2. The omission of renovations lead to a threat to the stability of the Memorial Apartments structure, threaten the lives of its users, and further damage the building by damaging further elements, may even cause this building disaster. As result of the abandonment of renovation, was caused by the lack of the Defendants, improper manager, and irresponsible owners, these objects are degraded. The consequences of Defendants failure of renovating Memorial Apartments is leading to irreversible processes of destruction.

41

3. Degradation of Memorial Apartments, which will be caused from the lack of renovation to damaged structural elements, new elevators, new critical systems installed i.e. pipes, electrical and those other needed installation accessories. The consequences of the serious omission of the renovations that should have been done is the main reason for damage to the building's structure and the lack of safety to Plaintiffs and other renters .

4. The omission of Supportive Services in Building, omission of units Building Safety measures, lack of active staff coverage on 24 hour basis 7 days, not having Emergency Procedures in place, no telecommunications within buildings, no documentation or safety mechanisms to the true/correct facts of the happening any incidents or emergencies has caused to a significant rise of crimes within this Building Complex with Baltimore Police District alerting internally to  red flag (aka Linden Park)Apartments on their 911 Police Tracking system identification as having extremely high 911 calls for a significant high number of crimes at this site. Baltimore City Police Department covering this area - death records shows there has been a significant number of seniors deaths in the (aka Linden Park)Apartment Building who's individual bodies were in their apartments for periods of time before families or others were able to determine they were dead - with some of the death causes still being unknown.

42



# COUNT IV.

## TRESPASSING AND BREACH OF PRIVACY

1. Defendants gives outside contractors Plaintiffs unit keys to enter at will without Plaintiffs permission.

2. Defendants uses the internet to communicate to others Private entities Private and personal information about Plaintiffs without permission written to do.

3. Plaintiffs leasing information with sensitive personal and private information is accessible to others within Defendants Company computer systems without Plaintiffs permission.

43

4. Defendants contracts with third party entities CafePress in order for Plaintiffs to

submit rent and maintenance request electronically. CafePress provides no privacy agreement of

Plaintiffs required very sensitive information when submitting anything through them to

Defendants. To use this service Plaintiffs would be required to pay $5.00 for each use and any

Error on this Company part is now being considered by owner.

    a. Note '-2020, the FTC alleged that CafePress failed to implement reasonable

       security measures to protect the sensitive information of buyers and sellers

       stored on its network a fact Defendants are aware.

    b. All Plaintiffs Personal, Private information and notices are attached to

       unit door for access for anyone to have to as Internet Contractors as as

       "Rent Cafe"{* Note-Federal  Trade Commission - Protecting

       America's Consumers Proposed FTC settlement "Data

Breach CafePress Cover

       Up", "CafePress employed careless security practices and

concealed multiple breaches from consumers," "These orders dial up accountability for lax

security practices, requiring redress for small businesses that were harmed, and specific

controls, like multi-factor authentication, to better safeguard personal information." } have

Plaintiffs and renters to sign up with.

 Form that was attached to Plaintiffs unit doors regarding establishing a

44

Tenant Portal for Linden Park Apartment (Not Memorial Apartments name on Plaintiffs leases).

No other information provided by Defendants as to how to use, protection of Plaintiffs Personal

information - No answers by Defendants whatever to All the concerns about this Third Party

Vendor to have access to Tenants information ( Note- this Tenant Portal too discriminatory

practices against Plaintiff Mason and other Senior renters who are not even Technologically

Savvy don't have emails/address or knowledge of how to use one). No good faith duty to the

population Defendants Services.

  

**Plaintiff Morris complaint of contractors entering apartment without my**

**permissionContractors entering apartments**

**Keys given to them by Defendants**



# COUNT V.

## CONSTRUCTIVE EVICTION

1. Defendants  Building has no designated employment staff/staffing or systems in place to ensure emergency or incidents situation are handled responsibly, documented completely within the common areas thus ensuring minimal risks to Plaintiffs, its renters and quantifying the facts are true and correct should safety and legal questions arise.

2. January 14, 2022 chain of events  for which Plaintiffs acted under the " Good Samaritan Act "  provide care, help, food and emergency help to an double amputee, ill renter abandoned by his wife Kathy Austin in the 6th floor common area of building for no Defendants (Management in building or was reachable by phone),Plaintiffs further alerted All renters on 6th floor to take precautionary measures related to health and safety matters that were  existing in the victim' unit that he lived in. Plaintiffs made reports to protective services departments, police department and comprehensive  documented reports to all Defendants to actually what happened. Defendants in their failure to exercise reasonable care to preform their obligations in this matter did so choose to side in complicity with abandoned victim renter wife Kathy Austin (who reportedly told the Site Manager on 1/16/2022 Plaintiffs entered her unit without her Consent on 1/14/2022 without her being there. A lie the Defendants choose to use to Cover up their

46

Malfeasance actions [Receiver of Public Funds subsidiary for that unit rental ] rather then

acknowledging Plaintiffs Complaints about the matters of 1/14/2022-1/16/2022, Plaintiffs

received eviction notices for Trespassing on 1/14/2022 of rental unit from Defendants Attorney

Demanding Plaintiffs to vacate Building within 30 days ) to hide the real facts the Defendants

actively knew of the ongoing violence, abusiveness, neglect toward her husband and her ongoing

Public drunkenness in the building along with her disruptive acts toward others in the building

with No Defendants actions being taken against her. Plaintiffs pictures of apartments for show

the condition renters were living in shows clearly Defendant place  Plaintiffs and other renters

health and safety at risk for neglect of their failure to inspect units and address complaints from

renters within the building.

3. Ongoing  tactic of intimidations with eviction threats as Defendants

means to silence Plaintiffs complaints ( Defendants eviction Demand remains in

Plaintiffs files as of these filing that Plaintiffs have not been able to dispute or remove ).

4. Contrived false written claims made against Plaintiffs and questions of legal ethics

violations  by Defendants attorney when sending Plaintiffs Evictions letters for Trespassing

without ever going through the Maryland District Court to obtain a Court Order. This posturing

and threatening from Defendants Attorney attempts to silence Plaintiffs positions of truth,

precisely shows to the extent Defendants will go to cover their illegal activities.

47

## Plaintiffs Eviction fromDefendants Attorney by Certified Mail

  

Plaintiffs asked by abandoned Victim Mr. Austin to push him in his wheelchair to his Unit No.

601 so he could get his medicine to take since he had not had any in a few days. Mr. Austin

unlocked his door to be pushed inside but because of the conditions that included human feces,

vomit, and urine everywhere, Plaintiffs took terms with Mr. Austin permission entered the unit to

attempt to find a blue bag had his medication. Several attempts failed my Mr. Mason concluded

his wife had it with her.Plaintiffs filed Police Report of 1/14/2022 for no Defendants present or
Could be reached.

   

One of several Plaintiffs complaints about 1/14/2022 never discussed with Plaintiffs or even acknowledged receiving.

## COUNT  VI

## FRAUD BY FALSE CLAIMS

1. Plaintiffs initial filing in State Court was lead  in the direction of Tenant v. Landlords dispute by the legal advice having been given. At first Plaintiffs questioned -

> "Why should we even have to go through filing Court papers in order to stop
>
> being evicted from our homes for helping another tenant that had been
>
> abandoned by his wife and no management was present during that time
>
> or talked with us about what happened before having their attorney send out a
>
> eviction letter"

when trying to get legal help but no acceptance from any attorney, ultimately Plaintiffs had to go at it alone and Represent ourselves in State District Court. Plaintiffs preparing case to move forward more and more facts began to surface as to the real questions of our case. Once Plaintiffs took a hard look at the information and facts surrounding our lawsuit the real question of our lawsuit was not one of tenant v. Landlord, but,  how Defendants(Owners) has forged a scheme to conceal their high Profit line from this property  by cutting deals that allows Defendants not to

49

have to put out very little or no expenditures for rehabilitation of this building, Continuing

maintenance of the buildings and inclusion of support services in the building.

2. Suddenly realized that Defendants rental of this building  (what ever the conditions ) in

Baltimore City for Elderly and Disabled is one of the backdoor deals the Baltimore City Elected

Officials have been structuring to justify their failure to create stable affordable decent housing

within the city for years.  Baltimore City urgent needs for housing has set up Paradox agreements

with Multi-Family Property Owners (i.e. Defendant -Owners) of which there has never been any

oversight of these agreements by Baltimore City or Adequate systems of assurance in place

within Baltimore City that Housing Regulations and inspections are beings adhered to by Multi-

Family rental Property Owners.

3. Any Federal, State and Local Funding compliance of those disbursements - HUD

requirements for rental properties have abdicated to local governments housing authorities

for oversight, regulatory responsibility, legislative authority/development and inspections =

Baltimore City have not been doing.

> {Fraud or false statements in a Government matter." There shall not, in
> any matter within the jurisdiction of any department or agency of the United
> States, knowingly or willfully falsify, conceal or cover up by any trick,
> scheme, or device a material fact, or make any false, fictitious, fraudulent

**statements or representations, or make or use any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. Special attention is required in the certification of time and attendance reports and documentation.}**

4. Defendants has made false and misleading written Building Renovation Plans, surveys, Documents, materials, Reports, applications to Governmental Departments, Banking Institutions and financial Investors to accumulate sums of money in the amount of no less than $54,000,000.00 (dollars). This buy-in partnership (which Somerset Development paying an estimate $850,000 amount to be primary for- profit share owner - to the non Profit original owner Memorial Development Partners, LP (MAC) =Memorial Episcopal Church for this deal to happen) falsely marketing the money would be used for the renovation of Memorial Apartments (condominiums), Provide in building support services and other amenities for the Plaintiffs and renter to Live in a Safe, Green Environment for elderly and disabled with to assist us remain independent within the community.

- Memorial Apartments (condominiums) held no mortgage at time of partnership took place. All rental units generated for profit revenue that was used to maintain and operations of Memorial Apartments building , as well,  to maintain the commercial land on building deed and the vacant buildings on deed.

- Defendants- all responsible for Advertisement of Building Units for rent on Various marketing internet website.

- Monthly Revenue generated from rental incomes are all profit [for it only took about $3,000,000.00 to rehab this no mortgage] that about 30% goes for operating, maintenance and administrative expenses with the other 70% being pocketed by the for Profit side of the Hybrid Business Company to use at their pleasure.

- When Defendants made their representations to Plaintiffs in Signing of Leases Promised to give Plaintiffs Unit that were to seamlessly blend the {Lease Memorial Apartment not} aka Linden Park Apartment independent Senior building community into the urban environment of National Historical Bolton Hill (Baltimore) Maryland allowing Plaintiffs to benefit from the surrounding Town Culture District while scaling back on costs and overheads of living in a home while still maintaining our Independence. Defendants promised of making life easier for Plaintiffs living in Memorial Apartment aka Linden Park Apartments. Defendants promised Plaintiffs would enjoy the privacy of our home. This environment would allow us to maintain our independence, with the luxury of not having the stress of maintenance and upkeep of a house as empty nesters.

- Defendants promised the facility  have 24-hour staff who can quickly and easily provide help if Plaintiffs ever need it. Defendants promised the facility have safety measures to make Plaintiffs feel more secure in Plaintiffs living spaces, especially since being elderly persons who live alone.

- Defendants promised the facility offered a wide range of different activities and social events tailored to Plaintiffs needs and interests—from sports and fitness programs to  gardening, book clubs, cards, arts and crafts, and adult education classes helping Plaintiffs feel healthier, happier, and less isolated. Defendants promised  the facility offered other services of Community Meals for low cost and a Wellness Center to support the dimensions of Wellness;  Emotional, Financial, Social, Spiritual, Occupational, Physical, Intellectual, Environmental all driving factors to sign a lease.

- Defendants skillful Marketing of what was to have been in Building lured  Plaintiff Morris to sign Lease,

- Plaintiff Mason a tenant for 20  years  Who's impute impacted on the property getting renovated by  owners since he was one of the first Section 8 certificates accepted by Memorial apartments after his major surgery so not to go into a residential facility or nursing home. Memorial Apartments had firmly

53



established  HUD Support Services in place to gave him the services needed

to remain independent. The  Promise then to keep him here of not only more

Services and a healthier living environment for his body to thrive in- instead

given an Eviction as a Thank You for his Class statistical percentage used that

Defendants included on Government, Financial and Investors Disclosure

Forms to fill their profit vaults. Plaintiff Mason unit problems list are ones that exist from when

first moved into unit after building rehab and as of filing has gotten more widespread of  which

Defendants know of and has not done anything about   to correct.Leak, mold, breakage, sloppy

surface area covering of asbestos wall boards in Unit but Baltimore City passed his Inspection.









54

Plaintiff Arnell Mason Apartment 712 As of this filing with many complaints

to Defendants area has mold and uncovered asbestos boards that was never

done when rehab by Contractors doing the work. Plaintiffs

Morris has the same problem.





- Defendants failure to take reasonable renovations to make elevators and emergency

Plans to Accommodate the Disabled in violation of HUD and ADA as required for the funding

renovation of buildings received.

- Defendants have not done what is required in the initial renovations and ongoing

maintaining of [Memorial Apartment] aka Linden Park Apartments Elderly and Disabled facility

to ensure Plaintiffs are living in a Safe environment and facility as per Defendant received

monies from Government and Private to do so.

- Defendants have been notified both written and verbal many times of those Unsafe

Living Conditions as to;( a.) mold ,( b.)Asbestos issues, (c ) Non-functional and unsafe faulty

utilities e.g. plumbing, elevators, flooring , (d )Filthy waste disposal shoot, (e ) Water Leaks

throughout building from rain and in apartments, ( f.) Broken locks (g.) non working security

cameras throughout buildings or non around outside of buildings, (h). Constant lose of hot

water for Defendants didn't install new system in building as per received monies from

Government and Private to do so.

   - Defendants enhanced their representation of building to cause Plaintiff Morris to sign L

lease and for Plaintiff Mason to remain in Building after the Rehabilitation. Defendants

new that their representation of the building were untrue when they approved lease by

signing off on it.

   - Defendant have made false claims to be within the required regulations and Laws

regarding Federal Housing regulations/requirements. Facts of false claims by Defendants are

clearly supported  within new issued HUD No. 23-092: As of May 10, 2023

**"HUD STRENGTHENS STANDARDS AND ALIGNS INSPECTION REGULATIONS FOR EVALUATING
CONDITIONS IN HUD ASSISTED AND INSURED HOUSING**
NSPIRE Final Rule Effective July 1 and October 1 for all HUD Rental Assistance Programs"

   - Baltimore City having no standard rental housing statutory or regulatory authority or

law being followed  subsequently negated the force and effect of  HUD laws therefore allowing

Defendants to sidestep rental elderly and disabled Laws, regulations and procedures meant to

protect Plaintiffs Rights under the Constitution and the public in any way.

   - Defendants falsely claim holding public hearings to obtain the views of citizens,

particularly residents of the area Memorial Apartments in which the proposed activities were being carried out; nor had analyzed the impact of these proposed activities that were requesting monies for.

5. Defendant Memorial Development Corporation and/or its owners have affirmed that it is the guarantor of and personally liable for the debts of its subsidiary Somerset Development Company. Plaintiffs continue to conduct discovery as to whether other Defendants hold themselves out as liable for the debts of other Defendants.

6. Defendants Habitat Site Management , Habitat Property Management, LLC, and others also hold themselves out in public documents as operating as a joint enterprise.

7. Defendants Habitat site management and Habitat Property Management , LLC, hold themselves out, in documents provided to government agencies, as owners of properties that are in fact nominally held by other Defendants;

8. On information and belief, Memorial Development Corporation, and Somerset Development Company , among other Defendants, formed and used other Defendant entities to transfer to them the existing debts and liabilities.

9. Defendants have also formed multiple entities for the sole or primary purpose of facilitating transactions such as acquiring other properties from third parties under common ownership or obtaining more favorable debt financing.

10. Plaintiffs are also informed and believe that Defendants have at all relevant times commingled funds and failed to properly segregate funds. Plaintiffs  have some and continue to seek discovery on this issue. Defendants, including Memorial Development Corporation and Somerset Development Company  have overlapping and in many cases identical directors and/or officers. These identical owners/directors include but are not limited to Nancy Hooff and Jim Campbell who have at all relevant times been employed at Somerset Development Company.

11. Defendants Habitat Site Management and Habitat Property Management are

57

**Episcopal church established by Baltimore slave owners creates $500,000 reparations fund**

Jan 29, 2021 at 3:40 pm
A Baltimore Episcopal church founded by slaveholders in the 1860s says it will spend $500,000 over the next five years to establish a fund intended as reparations for slavery.

Members of Memorial Episcopal Church in Bolton Hill voted Sunday to set aside $100,000 to donate in the next year to community organizations doing "justice-centered work." The fund aims to address race-based inequalities that took root during slavery and proliferated for generations in the church and in the community at large.

The parish will take half the funding from its endowment and half from its operating budget, and will provide $100,000 each year for the next five years, the Rev. Grey Maggiano, the rector, said.

A church advisory group will choose beneficiaries that focus their work on issues of housing, education, environmental justice or civic engagement — areas in which church researchers have found that parishioners supported racist views and practices in years gone by.

"The parish has been focusing on uncovering the truth of our past," Maggiano said. "We've been studying the true impact that Memorial inflicted on our neighbors through housing segregation and redlining, through disenfranchisement of Black voters, and through inequity in school and youth programs here in Baltimore."

registered to the same agent and address in Annapolis MD. but are directly responsible to Owners Somerset Development Company and not Memorial Development Corporation.

12. Defendants Owners share common in-house legal services and accounting services and use common databases, email systems, and other computer systems office spaces in Washington DC . and not In Baltimore Maryland where Activities are.

13. Relevant documents disclosed also indicate that Habitat Property Management and/or its agents and employees, including Sandy Kendall, CPM -Assistant V.P., as a majority shareholder of multiple Defendants, exercise control over other Defendant entities, and use them as instrumentalities or conduits for their business with respect to the alleged misconduct.

14. Defendants Memorial Development Corporation Board of Directors (Nonprofit) =Memorial Episcopal Church (Owners of Memorial Apartments) listed in Public has never met with Plaintiffs to discuss any issues with the building or made known availability to reach nor how to reach anyone on this Board (Known as MAC).

Ashiah Parker, President
Rev. Grey Maggiano, Vice President
Barbara Cates, Secretary
Doug Kelso, Treasurer



Directors:
Michael Booth.
Marjorie Forster
Matthew McNabney
Ryan Turner

58

Fred Gorman
Evelyn Williams
Mabel Causer
Dale McCullough
Rev. Susan Woodson




15. This False Claim and deliberate deception is openly Published on MAC website - "MAC continues to be a partner of Somerset at Linden Park and uses its share of the property's annual cash flow to fund the property's resident services program.".

16. Documents show that contract amount on Memorial Apartments construction from period of 2015 - 2017 amount to have been $1.3 million dollars not $26 million dollars that didn't include any New Critical Systems.





59

17. Defendants show building individual units are associated with assessment and in those values indicate a base value with additional renovation costs totaling more than a private home in the area.Defendants intentionally inflating the values of those properties .









18. As a further direct proximate result of Defendants' actions Plaintiffs, as stated above, Plaintiffs have suffered and continues to suffer general damage including but not limited to significant and emotional distress including humiliation. Mental anguish and physical distress, injury to mind and body, in sum to be proven at the time of trial, in excess of the minimum Jurisdiction requirements of the Court. Plaintiffs are further entitled to prejudgment interest in an amount to be shown at trial. Defendants' gross misrepresentation of Plaintiffs worthiness has resulted In emotional distress to Plaintiffs, Simultaneously the devaluation of years of our lives by Defendants attempting to rewrite the historical records/legacies of our lives - mainly because of the color of Plaintiffs skins. Defendants classis views has characterized Plaintiffs lives values no more than the price they have determined to be -that which is beneath Defendants.

18. Defendants' actions were fraudulent, malicious and oppressive. Plaintiffs is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

## PRAY FOR RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully requests that the Court:

(a)     Appoint a receiver who has demonstrated to the Court the expertise to develop

and supervise a viable financial and complete new renovation plan within this date modern

building Standards guidelines and statures/regulations for this to be "State of The Art"

renovation of the multi-unit  rental elderly and disabled housing accommodations which are the

subject of this lawsuit -Total cost and expenses to be paid by Defendants (Owners).

(b)     Defendants (owners) to pay for the total cost of new Complete

Renovations of 301 McMechen St., Baltimore Maryland 21217.

(c )     Defendants (Owners) jointly and severely, contribute funds in excess of the rents

collected from the rental housing accommodation for the purposes of abating Housing violations

and assuring that any conditions that are a serious threat to health, safety, or security of the

occupants or public are corrected immediately.

(d)     Defendants (Owners) upon Renovation of buildings to relocate residents

temporarily to accommodation housing until residents apartments are made safe. Defendants

(owners) to pay for all residents temporary relocation expenses and costs.

(e)     Restitution and Damages to Plaintiffs in an amount of  $500, 000. 00 ( Five

Hundred Thousand Dollars) to each Plaintiff.

(f)   Order that Defendants, jointly and severely, provide ongoing full Support Services

to all Renters.

(g)   Civil penalties

(h)   Grant such further relief as the Court deems just based on the facts and applicable

Law (s).

## JURY DEMAND

(i)   The Plaintiffs demands a jury trial by the maximum number of jurors permitted

by law.

(j)   Certification and Closing  Under Federal Rule of Civil Procedure 11, by signing

below, We certify to the best of our knowledge, information, and belief that this complaint:

(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the complaint otherwise complies with the requirements of Rule 11. A. B.

(5)  For Parties Without an Attorney we agree to provide the Clerk's Office with any changes to our address where case related papers may be served. We understand that our failure to keep a current address on file with the Clerk's Office may result in the dismissal of our case.

Date: June 19, 2023

**Respectfully Submitted,**

Deborah Morris - Pro Se

301 McMechen St. Apt. 814

Baltimore, MD. 21217

(302) 298-4253

deborahm404@gmail.com

Arnell Mason - Pro Se

301 McMechen St. Apt. 712

Baltimore, MD. 21217

(410) 905-4624

masonarne11810@gmail.com