**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEBORAH MORRIS, et al.,** | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No: 1:23-cv-01641-JMC |
| **MEMORIAL DEVELOPMENT PARTNERS, LP, et al.,** | | |
| | * | |
| *Defendants.* | | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs, Deborah Morris and Arnell Mason, filed the present lawsuit *pro se* against Memorial Development Partners, LP, Somerset Development Company, and Habitat America, LLC (collectively "Defendants") on June 20, 2023.  (ECF No. 1).  Plaintiffs then amended their Complaint on August 4, 2023, after the Court indicated that it violated Federal Rule of Civil Procedure 8 and Local Rule 103.1(d).  (ECF Nos. 17, 18, 19).  The Court denied Defendants' prior motion to dismiss the Amended Complaint via Memorandum Opinion and Order on February 23, 2024, because the Court instead granted Defendants' alternative request for a more definite statement after detailing various deficiencies in Plaintiffs' Amended Complaint.  (ECF No. 50).  In so doing, the Court permitted Plaintiffs to file a Second Amended Complaint addressing those deficiencies within twenty-eight (28) days from the date of that Memorandum Opinion and Order.  *Id.*  Plaintiffs then filed their Second Amended Complaint on March 8, 2024.  (ECF No. 51).  Presently before the Court are two motions: (1) Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 52); and (2) Plaintiffs' motion for leave to file a surreply

(ECF No. 56).[1] The Court has additionally considered all oppositions and replies thereto.  (ECF Nos. 54, 55, 57).  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, Plaintiffs' motion will be denied and Defendants' motion will be granted.

## I.    BACKGROUND

At all times relevant to this lawsuit, Defendants owned and/or operated a housing complex known as "Linden Park Apartments."  (ECF No. 51 at 2).[2] Both Plaintiffs separately occupy two of the roughly 270 units within Linden Park Apartments.  *Id.* at 2–3.  Plaintiff Mason's occupancy began roughly twenty-two years ago when he "was placed at the building" through a "Class Action integration 'Special Provision' agreement," under which he was "without any signed lease agreement or options of units – just assigned to an existing unit."  *Id.* at 28.  Plaintiff Morris' occupancy began in November 2021.  *Id.* at 13–14.   Plaintiffs aver that the Linden Park Apartments are condominium units and that "Defendants Condominium management is made up of a board of unit owners who oversees the daily operation of the complex, such as lawn maintenance, snow removal, and building updates."  *Id.* at 3.  Plaintiffs assert that the Linden Park Apartments are not registered or licensed as a condominium rental property within the city of Baltimore, but also that the city of Baltimore has "literally wiped out Baltimore City Rental and

---

[1] Plaintiffs' motion is titled: "Consent Motion for Permission/Leave of Court for Plaintiff Legal Standing, Federal Rules of Evidence and Claims Response to Defendants Reply Memorandum in Further Support of Defendants' Joint Motion to Dismiss Plaintiffs Second Amended Complaint."  (ECF No. 56).  The Court construes this as a motion to file a surreply in further opposition to Defendants' motion to dismiss and will analyze it as such.  Additionally, the Court notes that the motion was *not* filed with Defendants' consent as represented in the title.  *See* (ECF No. 57).

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.  At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).  As a preliminary matter, Plaintiffs' Second Amended Complaint contains many criticisms of Baltimore City local government and housing officials as well as Baltimore's housing regulations.  As Plaintiffs do not tie any of those criticisms to the Defendants and the entities presumably targeted by Plaintiffs' concerns are not before the Court in this lawsuit, the Court declines to rely on those factual allegations in Plaintiffs' Second Amended Complaint as being attributed to Defendants. *See, e.g.*, ECF No. 51 at 9–11, 21–23.

Housing Laws to accommodate Condominiums for rental purposes." *Id.* at 5. Moreover, Plaintiffs allege that Linden Park Apartments engages in "ghost business transactions" that "intentionally denies the rights of Plaintiffs (and others) as renters within the building." *Id.* at 7.

The crux of Plaintiffs' Second Amended Complaint is that "Defendants do target [have targeted – Plaintiffs] for their Human Trafficking Business rental schemes, vulnerable elderly and disabled persons . . . because Defendants knows business are not regulated in the same manner as apartments not having to be accountable to oversight and enforcement business wise on any Local, State, and Federal level." *Id.* at 6. Specifically, Plaintiffs take issue with several of Defendants' alleged business practices. For instance, Plaintiffs allege that Defendants improperly require Plaintiffs to address their monthly rent payments to "Linden Park Apartments" and treat "Plaintiffs monthly rental fees as though [Plaintiffs] were paying on a Debt Plaintiffs had incurred." *Id.* at 7–8. Related, Plaintiffs contend that Defendant Habitat America, LLC unlawfully collects Linden Park Apartment's tenants' rent payments because it is "not Licensed as a business entity for collections of debts in the entire state of Maryland but do so collect all Rentals and other fees from Plaintiffs and all other tenants in Property." *Id.* at 8.

Plaintiffs also take issue with Defendants' leasing process by claiming that:

Defendants general leases vaguely structured that are largely papers related to what is in the building and intentionally omits Plaintiffs housing Rights, names, addresses and contact information of Owners that name is on the lease, policies and procedures regarding security deposit, rental payments and receipts, policies procedures for complaint and resolution of complaints, building responsibilities for repairs and maintenance in unit and other areas of buildings, emergency management plans for building, policies and procedures routine maintenance/inspections, no consent forms signed by Plaintiffs for release or any personal information to be released to anyone -that should limited time period consents are to be used and specifically the person or Government agency to have access, all records of Plaintiffs (and other) not allowed by us to be looked at, reviewed or disputed information that has been put into them. Everything Plaintiffs are entitled to under Housing Laws have been intentionally omitted by Defendants. Plaintiffs (and including other vulnerable elderly/disabled renters in

> building) leases tantamount to no more then a debt being owed, as the price, for us
> to assimilate in Bolton Hill - an extremely affluent and majority White
> Neighborhood - deceitfully limiting our Lives safety and housing conditions by
> old infrastructure of building, no plans for safety or emergencies, building is not
> within laws of ADA -meshing deterioration daily - allowing Defendants
> enterprises homesteaders continuing ripping the financial benefits from shelters on
> their land - do laden heavily on Plaintiffs soul thus we pray for reparations and
> solace written in our Scroll.

*Id.* at 11–12, 28.

Plaintiffs further claim that Defendants intentionally discriminate, intentionally exploit and/or abuse elderly and disabled individuals, unlawfully evict tenants, commit theft, falsely accuse Plaintiffs of criminal wrongdoing, intentionally operate under a fake name, and operate the Linden Park Apartments in non-compliance with the Americans with Disabilities Act ("ADA"). *Id.* at 12.  Regarding Plaintiffs' ADA reference, Plaintiffs allege that "several blind persons live in buildings with 2 original buildings elevators that have Braille floor knobs with no floor signals or voice Floor identification so if persons don't recognize or read braille they have no way of identifying floors to get on or off elevators except for the assistance of another person."  *Id.* at 27. Plaintiffs equate these alleged business practices to "Trafficking in persons," "human trafficking," and "modern slavery" throughout their Second Amended Complaint.  *See, e.g.*, *id.* at 2.

Plaintiffs also maintain that the Linden Park Apartments:

> [H]olds minefields of health hazard conditions, safety problems and structural
> defects that are left not addressed further never have been inspected, reported,
> recorded, monitored, certified and licensed as required so designated by the local,
> state, and federal regulatory under building being used for the purposes of doing
> Business as required {Business Occupations and Professions – regulated under Md.
> Code, Com. § 14-401} has been intentionally misleading in Defendants business
> enterprise.

*Id.* at 28–29.  More specifically, Plaintiffs contend that the living units within the Linden Park Apartments contain mold from water damage and other environmental effects which have gone unremedied by Defendants.  *Id.* at 29–30.

The Court previously directed Plaintiffs to include a clear basis for jurisdiction in their Second Amended Complaint because such information was lacking in Plaintiffs' First Amended Complaint.  Plaintiffs Second Amended Complaint now initially alleges "a continuing pattern of racially discriminatory conduct in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, Housing and Urban Development Act of 1968, Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19 ('FHA'), Non compliance and discrimination under Title III Of The American With Disabilities Act, 18 U.S.C. § 1962(c) Racketeer Influenced Activities – enterprises that are 'association-in-fact' of legal entities."  *Id.* at 13.  However, Plaintiffs detail only the following causes of action in their Second Amended Complaint: (1) "Discriminatory refusals to transact, differential terms, and false representations in violation of the class action agreement per required under {case of HUD <Thompson, *et al.*, v. HUD, *et al.*, - CV – 95-309 Action MJG} for housing of individuals that have been denied housing in the Bolton Hill area Of Baltimore- Contract With Baltimore City's Housing Authority's. Bias – Being treated differently (ongoing practices, activities and behavioral)"; (2) alleged violations of the FHA; and (3) alleged violations of the RICO Act under 18 U.S.C. § 1962(c).  Plaintiffs seek a Court order directing Defendants to (1) build a "State of The Art" housing complex "accessible to all which are the subject of this lawsuit"; (2) pay for the "total cost of new Complete Renovations" of the Linden Park Apartments; (3) jointly and severally contribute funds in excess of the rents collected to abate housing code violations; (4) relocate current tenants while the state of the art facility is being built; (5) pay each Plaintiff $500,000.00; (6) charge no more than $900/month for rent for the next thirty years; and (7) "Civil penalties."  *Id.* at 40–41.

## II.     LEGAL STANDARD

### A.   Motion for Leave to File a Surreply

Local Rule 105.2(a) provides as a general rule that "surreply memoranda are not permitted to be filed." Loc. R. 105.2(a) (D. Md. 2023). "Though surreplies are generally not permitted . . . the Court in its discretion may allow a party to file a surreply." *Demendoza v. Burlington Coat Factory Warehouse Corp.*, No. CV ADC-22-2726, 2024 WL 249393, at *2 (D. Md. Jan. 23, 2024). "This discretion is typically exercised to allow parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Id.* Surreplies may also be appropriate where "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). The party seeking leave to file a surreply "must demonstrate the need for a surreply" beyond "merely respond[ing] to arguments addressed" in the opposing party's previous filing. *Friends of Lubavitch v. Balt. Cnty., Md.*, 421 F. Supp. 3d 146, 158 n.7 (D. Md. 2019).

### B.   Motion to Dismiss

"Federal Rule of Civil Procedure 8(a) prescribes 'liberal pleading standards' that require a plaintiff to submit only a 'short and plain statement of the claim showing that [he] is entitled to relief.'" *Lundregan v. Hous. Opportunities Comm'n*, No. CV PJM 19-1369, 2019 WL 6343477, at *1 (D. Md. Nov. 27, 2019) (quoting Fed. R. Civ. P. 8(a)). A plaintiff's complaint must therefore contain facts sufficient to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"Federal courts have an 'obligation to liberally construe a *pro se* [c]omplaint' and may consider additional facts and information supporting the complaint that is provided in an opposition to a motion to dismiss." *Lundregan*, 2019 WL 6343477, at *1 (quoting *Rush v. Am. Home Mortg., Inc.*, No. CIV.A WMN07CV0854, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009)).

## III.   ANALYSIS

### A.   Motion for Leave to File a Surreply

Plaintiffs have not demonstrated their need to file a surreply.  The proposed surreply does not respond to new matters raised for the first time in Defendants' reply.  Nor does it indicate that Plaintiffs are unable to contest any matters presented for the first time in Defendants' reply.

Plaintiffs have had ample notice of the deficiencies alleged by Defendants as this is now Defendants' second motion to dismiss Plaintiffs' claims. Rather, the proposed surreply re-alleges in conclusory fashion that Defendants violated the various statutes referenced in Plaintiffs' Second Amended Complaint and provides various citations to the Federal Rules of Evidence which are inapplicable at this stage of the litigation. Plaintiffs' motion is therefore denied and the Court declines to consider Plaintiffs' proposed surreply.

      B. <u>Motion to Dismiss</u>

      *1. Plaintiffs' Potential Claims Under the ADA Must be Dismissed*

Plaintiffs do not specifically enumerate alleged violations of the ADA under any Count in their Second Amended Complaint. But as noted above, Plaintiffs premise portions of their Second Amended Complaint on alleged violations of the ADA. These portions of the Second Amended Complaint and all references to Defendants' alleged violations of the ADA must be dismissed for lack of standing, failure to state a claim, or both.

The majority of Plaintiffs' allegations regarding potential violations of the ADA involve Plaintiffs' concerns regarding how *other* individuals are able to fully enjoy the Linden Park Apartments. "Prudential standing 'normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *A Helping Hand, LLC v. Balt. Cnty., Md.*, 515 F.3d 356, 363 (4th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). To establish such "third-party standing," a plaintiff must demonstrate: "(1) an injury-in-fact; (2) a close relationship between herself and the person whose right she seeks to assert; and (3) a hindrance to the third party's ability to protect his or her own interest." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002). Even assuming *arguendo* that the allegations contained in Plaintiffs' Second Amended Complaint demonstrate that certain

individuals in the Linden Park Apartments experienced injuries due to non-compliance with the ADA, Plaintiffs present no facts to support that they are in a close relationship with those individuals or that those individuals are unable to protect their own interests. *See, e.g.*, *Calvary Christian Ctr. v. City of Fredericksburg*, 800 F. Supp. 2d 760, 769 (E.D. Va. 2011) (explaining when there is no third-party standing under the ADA).

The only allegation regarding a potential ADA violation that impacts Plaintiffs—raised for the first time in their opposition—is that the Linden Park Apartment's elevators are sometimes out of service. (ECF No. 54 at 21–22). But Plaintiffs merely assert in conclusory fashion that the elevators are non-compliant with the ADA and provide no further factual support for the notion that Defendants have failed to service the elevators when such issues arise. Such allegations (or lack thereof) are insufficient to elevate the "simpl[e] [] fact of life that elevators will break down on occasion" into a cause of action under the ADA. *Kirola v. City & Cnty. of S.F.*, 74 F. Supp. 3d 1187, 1262 (N.D. Cal. 2014), *aff'd in part*, *rev'd in part on other grounds*, 860 F.3d 1164 (9th Cir. 2017). Accordingly, Defendants' motion to dismiss is granted to the extent that Plaintiffs may not pursue a cause of action under the ADA.

### 2. *Plaintiffs' Claims for Source of Income Discrimination and Differential Treatment Must Also be Dismissed*

Plaintiffs also lack standing to pursue any claims for alleged discrimination based on source of income regarding third-party individuals. Plaintiffs repeatedly allege in their Second Amended Complaint that Defendants unlawfully discriminate by "only accept[ing] income ranging between Low and Moderate income and not Extremely Low income individuals or people." (ECF No. 51 at 32). As a preliminary matter, it is unclear under what exact federal statute or cause of action Plaintiffs seek redress for this allegation. Plaintiffs cite the Civil Rights Act of 1866 for the proposition that it is unlawful to discriminate in the housing context "wholly or partially . . . based

on the actual or perceived . . . source of income . . . of any individual," but the exact language that Plaintiffs cite is the text of the District of Columbia Human Rights Act. *Id.* at 51; *see* D.C. Code Ann. § 2-1402.21.  Regardless, Plaintiffs may not pursue a cause of action under these allegations on behalf of other, unidentified individuals for the same reasons explained above.  Plaintiffs' Second Amended Complaint is therefore also dismissed to the extent that it alleges that Defendants discriminated against third-party individuals based on source of income.

Construing Plaintiffs' allegations liberally and with reference to other potentially applicable federal statutes likewise demonstrates that Count I of Plaintiffs' Second Amended Complaint must be dismissed in its entirety for lack of standing, failure to state a claim, or both. First, Plaintiffs note in their Second Amended Complaint that they both reside in the Linden Park Apartments despite Defendants' alleged source of income discrimination, so there is no clear indication that Plaintiffs have suffered any concrete injury for purposes of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical . . . The party invoking federal jurisdiction bears the burden of establishing these elements.") (internal quotations and citations omitted).

More importantly, Plaintiffs do not actually allege in their Second Amended Complaint that Count I is rooted in differential treatment based on source of income.  Plaintiffs provide citations to various federal programs like the Housing Choice Voucher Programs and the Low Income Housing Tax Credit in support of their claim that Defendants discriminate based on source of income.  (ECF No. 51 at 32).  But Plaintiffs' claim is based on Defendants allegedly discriminating against individuals based on their *economic status* as receiving low income rather

10

than claiming that Defendants discriminate against individuals based on their participation in any governmental assistance program(s).  Economic status is not a protected status for purposes of federal fair housing laws.  *See* 42 U.S.C. § 3604(b).  Nor is source of income.  *See Jones v. Blue Ocean Realty LLC*, No. CV SAG-22-02572, 2023 WL 3074642, at *4 (D. Md. Apr. 25, 2023) ("[T]he FHA does not protect against discrimination on the basis of 'source of income.'") (citing *Williams v. Arora Hills Homeowners Ass'n, Inc.*, No. DKC-19-3370, 2021 WL 2226199, at *5 n.8 (D. Md. June 2, 2021)).  And although Plaintiffs blanketly cite 42 U.S.C. §§ 1981 and 1982 in their Second Amended Complaint (particularly in an attempt to establish jurisdiction), neither statute uses the phrase "source of income" or "economic status," and Plaintiffs fail to indicate that either (1) their claims of source of income discrimination are based on either statute or (2) if so, that individuals may pursue claims under either statute for alleged source of income discrimination.[3]  Plaintiffs provide no further clarity in their opposition.  Accordingly, Count I of Plaintiffs' Second Amended Complaint is dismissed to the extent that it asserts a cause of action for source of income discrimination.

Aside from alleged source of income discrimination, Plaintiffs also assert in Count I that Defendants discriminatorily treat Plaintiffs differently by: never personally meeting with Plaintiffs; never providing "contact information of owners with to final resolution lay"; "lie on by

---

[3] While Plaintiffs assert broadly that Defendants engage in a "continuing pattern of racially discriminatory conduct in violation of . . . 42 U.S.C. §§ 1981, 1982," Plaintiffs do not allege in their Second Amended Complaint beyond conclusory statements that any of Defendants' purported discriminatory actions were on the basis of Plaintiffs' race or any other protected status.  Those claims must therefore also be dismissed for failure to state a claim for relief.  *See Williams v. L. Off. of John W. Conrad III, LLC*, No. CIV.A. RDB-12-3050, 2012 WL 5266122, at *2 (D. Md. Oct. 22, 2012), *aff'd*, 518 F. App'x 180 (4th Cir. 2013) ("To state a claim under § 1981, a plaintiff must show that: (1) he is a member of a racial minority; (2) the defendants discriminated against him on the basis of his race; and (3) the discrimination impacted one or more of the activities protected by the statute."); *McAdoo v. Toll*, 615 F. Supp. 1309, 1312 (D. Md. 1985) ("Thus, a plaintiff must prove that the deprivation at issue was intentional and motivated by racial animus in order to be entitled to relief under § 1981."); *Mobley v. Rossell*, 297 F. Supp. 2d 835, 838–39 (D. Md. 2003) (describing the elements of a racial discrimination claim under § 1982); *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 384–91 (1982).

Defendants and from lies claims of having committed crime"; denying access to personal records that are stored in an unknown location; denying "a way to have false information cleared and expunged from our personal files"; denying "a way to question a decisions that placed Plaintiffs in danger"; forcing Plaintiffs to sign their lease agreements without certifying Plaintiffs rights were fully protected; denying "means or ways to freely communicate with Defendants on any form of personal information being shared other than in public spaces"; "look[ing] down" on Plaintiffs because of their income level; posting public messages in the common areas of the Linden Park Apartments on behalf of "Linden Park Apartments"; "den[ying] rights of refusal without being denied rights of alternative means"; directing tenants to pay "Linden Park Apartments" for their rental payments; providing month to month leases "after first year lease ends"; attempting to evict Plaintiffs for non-payment of rent; not following relevant health and safety laws; and "den[ying] the same Human respect . . . as given to others not residing" in the Linden Park Apartments.  (ECF No. 51 at 33–35).  As Defendants point out in their motion to dismiss, all of these allegations either (1) allege facts that, even if true, are not in violation of any law or (2) allege facts that are so vague that they cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted); *Lundregan*, 2019 WL 5343477, at *1 ("Although the facts alleged in a *pro se* plaintiff's complaint must ordinarily be taken as true, mere conclusory statements 'are not entitled to the assumption of truth.'") (quoting *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)).  Accordingly, Count I of Plaintiffs' Second Amended Complaint is dismissed in its entirety.

### 3.  *Plaintiffs Have Not Set Forth a Viable Cause of Action Under the FHA*

Turning to Count II of Plaintiffs' Second Amended Complaint, Plaintiffs assert that Defendants have violated the FHA by refusing to rent based on annual income;[4] never providing affirmative action policies; never providing renter rights; collecting money through debt collectors that are not licensed in the State of Maryland; failing to maintain the Linden Park Apartments; intentionally threatening Plaintiffs about unpaid rent; misleading Plaintiffs "as where rental files are kept"; never providing emergency evacuation instructions; misleading "as to unit maintenance responsibilities"; never providing receipt of security deposits; providing access to units without consent or authorization to do so; constructing the Linden Park Apartments as inferior to a neighboring complex because the Linden Park Apartments do not feature walk-in showers, ceramic tiles, newer tubs, newer laundry appliances, and newer stainless steel appliances; not providing a procedure for tenants to submit staff complaints; and requiring tenants to pay rent to Linden Park Apartments.  (ECF No. 51 at 36).  Plaintiffs also assert that the differences between the amenities available in the Linden Park Apartments and a neighboring complex amount to a "modern day case of Brown v. Board of Education."  *Id.* at 35.

Beginning with Plaintiffs' argument that the Linden Park Apartments is unlawfully inferior to a neighboring housing complex, the Court must reject this argument.  Plaintiffs' desires to have walk-in showers, ceramic tiles, brand new in-unit laundry machines, and brand new stainless steel appliances do not provide a cause of action under the FHA.  And such differences in living surely do not rise to the level of being synonymous with the race-based segregation of school children

---

[4] Plaintiffs do not specifically indicate whether this allegation stems from Defendants refusing to rent to Plaintiffs or other third-party individuals. To the extent that Plaintiffs' Count II is based on the former, the Court has already noted above that source of income and economic status are not protected statuses under the FHA.  To the extent that Plaintiffs' Count II is based on the latter, the Court has already noted above that such claims are subject to dismissal for lack of standing.

that was deemed unconstitutional in *Brown v. Board of Education*, 347 U.S. 483 (1954). Additionally, Plaintiffs provide no support in either their Second Amended Complaint or opposition—and the Court has found none—for the proposition that the FHA requires housing providers to distribute affirmative action policies, renters' rights documents, emergency evacuation procedures, rent payment receipts, instructions on accessing rental files, and/or any particular internal complaint procedures to tenants. The Plaintiffs do not contest as much in their opposition. *See, e.g.*, *Prince v. Libr. Co. of Balt. Bar*, No. 1:23-CV-00362, 2023 WL 3847430, at *6 (D. Md. June 6, 2023) (collecting cases and deeming certain arguments conceded where *pro se* plaintiff failed to respond to them in opposition to motion to dismiss); *McGraw v. Nutter*, No. CV DKC 20-0265, 2020 WL 7425308, at *5 (D. Md. Dec. 18, 2020). Nor are most of the above allegations supported by any further factual enhancement rather than Plaintiffs providing a laundry list of issues they believe to be in violation of federal law(s). *Iqbal*, 556 U.S. at 678.[5]

Plaintiffs do indicate in their opposition that Defendants' alleged threats consisted of Defendants sending a notice to Plaintiff Mason indicating he may be subject to eviction for engaging in criminal trespass and/or for non-payment of rent. (ECF No. 54). However, there are no further factual allegations to support a plausible inference that this was unlawful discrimination under the FHA based on Plaintiffs' membership in a protected class or that other similarly situated tenants outside of Plaintiffs' protected class experienced differential treatment. *See Adams v. Cameron*, No. CV TDC-20-3739, 2021 WL 5280978, at *5 (D. Md. Nov. 12, 2021).

---

[5] For instance, Plaintiffs provide no further information—either in their Second Amended Complaint or opposition to the present motion—about Defendants misleading Plaintiffs about renter files, misleading Plaintiffs as to unit maintenance responsibilities, and providing access to units without tenant consent. Plaintiffs' claims that they were discriminated against under the FHA by Defendants allowing third party vendors into their units without permission additionally fails to state a plausible claim for relief because there are no allegations that such conduct was done discriminatorily. *See Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012) (noting that a prima facie case of discrimination with regard to "uninvited contractor[s]" requires a showing that "allowing the contractor into [plaintiff's] apartment without permission was discriminatory harassment in violation of" the FHA).

Plaintiffs further attempt to paint the eviction notice as unlawful retaliation in their opposition to no avail.  Specifically, Plaintiffs allege in their opposition that they helped an unidentified, disabled tenant clean his/her unit on or about January 14, 2022, complained to Defendants "and outside officials" of their efforts, and were subsequently served with a "false material Eviction for Trespassing (criminal) violations of lease."  (ECF No. 54 at 14–15).  "In order to prove a claim of retaliation under the FHA, a plaintiff must establish that: (1) the plaintiff engaged in a protected activity; (2) the defendant was aware of the activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action."  *Jarvis v. Grady Mgmt., Inc.*, No. CIV. PJM 13-3853, 2015 WL 363620, at *2 (D. Md. Jan. 22, 2015) (internal quotation omitted).  Further, "To survive a motion to dismiss" is this context, "Plaintiffs must sufficiently allege a discriminatory intent on the part of the Defendant[s]."  *Hardaway v. Equity Residential Mgmt.*, LLC, No. CV DKC 13-0149, 2016 WL 3957648, at *6 (D. Md. July 22, 2016), *aff'd*, 675 F. App'x 381 (4th Cir. 2017) (internal quotation omitted).[6]

Plaintiffs have failed to do so here.  First, careful examination of Plaintiffs' filings demonstrates that Defendants took action against Plaintiffs for reporting their January 14, 2022, conduct because Plaintiffs allegedly entered the unidentified, disabled tenant's unit without the tenant's or Defendants' permission, which does not constitute a protected activity.  *See* (ECF No.

---

[6] To be clear, the Court recognizes that a plaintiff may allege violations of the FHA under either a theory of discriminatory intent or discriminatory impact.  *Letke v. Wells Fargo Home Mortg., Inc.*, No. CIV.A. RDB-12-3799, 2015 WL 1438196, at *6 (D. Md. Mar. 27, 2015).  Plaintiffs do not allege in their Second Amended Complaint or argue in their opposition that any particular policy or conduct by Defendants caused a significant disparate effect on a protected group, let alone the protected group(s) to which Plaintiffs may belong to.  The Court therefore analyzes Plaintiffs' FHA claims under the discriminatory intent framework.

54 at 6; ECF No. 18 at 40).[7] Moreover, Plaintiffs' opposition indicates only that they reported

helping that tenant clean the tenant's unsanitary unit (without attributing the cleanliness to any of

Defendants' conduct), which would also not constitute a protected activity for purposes of

unlawful retaliation under the FHA. (ECF No. 54 at 15).[8] Even if it did, the information indicating

that Plaintiffs allegedly trespassed into the other tenant's unit belies any plausible inference that

Defendants were motivated by a discriminatory intent (which Plaintiffs do not argue to the

contrary). *See Hardaway*, 2016 WL 3957648, at *7 (dismissing FHA retaliation claim because

"the pleading is devoid of plausible allegations that Defendant was motivated by an intent to

discriminate"). Accordingly, Plaintiffs have not stated a plausible claim for relief for unlawful

retaliation under the FHA even when construing their FHA claims liberally.

Regarding Plaintiffs' claim that Defendants violated the FHA by failing to properly

maintain the Linden Park Apartments, the only facts meaningfully related to that allegation in

Plaintiffs' Second Amended Complaint are as follows:

> [The Linden Park Apartments] holds minefields of health/hazards conditions,
> safety problems and structural defects that are left not addressed further never been
> inspected, reported, recorded, monitored, certified and licensed as required so
> designated by the local, state, and federal regulatory under building being used for
> the purposes of doing Business as required {Business Operations and Professions
> – regulated under Md. Code, Com. § 14-401} has been intentionally misleading in
> Defendants business enterprise.
>
> Defendants (since 2021) have intentionally caused Plaintiffs (elderly/disabled
> persons in buildings, employees and public) to be at risk of exposures and health

---

[7] Plaintiffs attempt to cast doubt on the validity of the trespassing notice in their opposition by asserting that they could not have trespassed on January 14, 2022, because they were not present at the Linden Park Apartments "during the period of January 13-16, 2022," yet concede a few pages later that they did, in fact, help the tenant on January 14, 2022. (ECF No. 54 at 5, 14–15).

[8] Plaintiffs insert small images into their Second Amended Complaint in support of their potential retaliation claim. (ECF No. 54 at 15). However, the images demonstrate only that the interior of the unidentified tenant's unit is cluttered and that trash and/or other household debris occupy certain areas of the tenant's unit. Plaintiffs do not allege that Defendants contributed to the tenant's disorderly abode or retaliated against Plaintiffs for claiming as much. Rather, Plaintiffs allege that they reported aiding their neighbor clean their cluttered unit, which is not a protected activity.

illnesses in our units and entire buildings for their refusal to adhere to State and Federal Regulations, Guidelines and Licensing Requirements . . .

Mold from water damage and other environmental effects/damages throughout [the Linden Park Apartments], Plaintiffs units, other Units and Common area that Defendants never took care of and still visually present in common area and kitchen areas.  Plaintiff Morris moved into unit (Nov. 2021) that windows, blinds, kitchen cabinets, bathroom area were covered with mold.  I reported to site management that never investigated or responded – I was made to remove all the mold myself using Clorox Bleach and white distilled vinegar.

(ECF No. 51 at 29–30).[9]  The first two paragraphs are overly conclusory, do not set forth plausible facts that support Plaintiffs' FHA claims, and do not put Defendants on notice of the exact (or even approximate) source of Plaintiffs' claims.  *See, e.g.*, *Bonilla-Mead v. McCabe, Weisberg & Conway, LLC*, No. CV PX-18-3113, 2018 WL 5279487, at *2–3 (D. Md. Oct. 24, 2018) (explaining that Rule 8(a) "requires that a Complaint include a short and plain statement of the facts supporting each cause of action," and directing *pro se* plaintiff to "include a short plain statement as to her claims against each Defendant, how each Defendant caused her harm, the nature of the harm, and the approximate date(s) on which each Defendant committed the claimed violations" because "The Complaint has not put Defendants on fair notice of that which they are to defend") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Regarding the third paragraph, even accepting it as true that Defendants ignored Plaintiffs' complaints of mold, Plaintiffs do not plausibly allege that Defendants did so with discriminatory intent or that Defendants did so pursuant to a specific policy causing a significant disparate impact on a

---

[9] This Court previously admonished Plaintiffs twice for submitting complaints and supplements to those complaints that far exceeded the page limitations provided by the Court's Local Rules.  *See* (ECF Nos. 17, 50); Local Rule 103.1(d) (D. Md. 2023).  Seemingly in an attempt to re-submit the materials that the Court deemed inappropriate and violative of those Local Rules, Plaintiffs try to incorporate their previous Complaint and Amended Complaint by reference into their Second Amended Complaint.  *See, e.g.*, (ECF No. 51 at 31).  The Court declines to do so given that this would amount to Plaintiffs' third improper pleading despite clear and unambiguous instructions from the Court, especially considering that Plaintiffs' opposition also violates the Local Rules by being excessively long.  *See* Local Rule 105.3 (D. Md. 2023).

protected group sufficient to pursue their claims under the FHA. *Letke*, 2015 WL 1438196, at *8. In fact, the allegations regarding Defendants' alleged failure to cure Plaintiffs' mold issues are repeatedly framed as violations of the Code of Maryland Regulations. But since this Court concludes that Plaintiffs' Second Amended Complaint fails to plausibly allege a federal cause of action for the reasons already discussed and yet to follow, the Court declines to exercise supplemental jurisdiction under these state law claims.

The FHA "prohibits public and private parties from engaging in certain discriminatory activities as part of ensuring 'fair housing throughout the United States.'" *Coleman v. Prince George's Cnty. Dep't of Soc. Servs.*, No. CIVA DKC2009-0213, 2010 WL 917871, at *2 (D. Md. Mar. 8, 2010), *aff'd*, 414 F. App'x 514 (4th Cir. 2011) (quoting 42 U.S.C. § 3601)). It covers unlawful housing practices ranging from discriminatory advertising to discriminatory retaliation and the discriminatory provision of housing itself, among other things. But the FHA does not necessarily provide a blanket cause of action for individuals dissatisfied with their current living situation. It requires pleading that a housing organization engaged in some sort of discrimination. Here, Plaintiffs have indicated various issues they have regarding their current housing and relationship with their landlord, but Plaintiffs' claims do not plead any sort of unlawful *discrimination* that would give rise to a cause of action under the FHA. Perhaps Plaintiffs' claims are best resolved at the state level through state causes of action, such as the lawsuit that Plaintiffs filed in a Maryland state court before it was dismissed because the Plaintiffs failed to prosecute their claims. *See Morris v. Mem'l Dev. Partners, LP*, No. 1:23-CV-01641-JMC, 2024 WL 811489, at *2 (D. Md. Feb. 23, 2024). Nevertheless, Plaintiffs do not present claims of unlawful discrimination that fall within the scope of the FHA. Accordingly, Count II of Plaintiffs' Second Amended Complaint fails to plausibly state any claim for relief under the FHA and is dismissed.

     4. *Plaintiffs' Second Amended Complaint Fails to Plausibly Allege a Violation of 18 U.S.C. § 1962(c)*

Finally, Count III of Plaintiffs' Second Amended Complaint alleges that Defendants violated 18 U.S.C. § 1962(c). (ECF No. 51 at 37). 18 U.S.C. § 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"To plausibly allege a § 1962(c) violation, the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 537 (D. Md. 2019) (internal quotation omitted). "[T]o demonstrate racketeering activity, a plaintiff must allege that defendants committed one or more of the predicate acts of criminal activity enumerated by § 1961(1)," which includes "a variety of federal and state criminal offenses." *Sparrow v. Bank of Am., N.A.*, No. CIV. JFM-14-0388, 2014 WL 4388350, at *6–7 (D. Md. Sept. 4, 2014), *aff'd sub nom. Sparrow v. Bank of Am., NA*, 600 F. App'x 187 (4th Cir. 2015). "[I]n addition to the elements of a RICO claim predicated on racketeering activity, a plaintiff pleading a RICO claim based upon the collection of an unlawful debt must also establish (1) the collection of an unlawful debt and (2) the use of proceeds from that collection to further the enterprise." *Id.* at *7. Pursuant to 18 U.S.C. § 1961(6), "unlawful debt" means:

> [A] debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

Plaintiffs' claims do not meet the above standards. First, Plaintiffs do not clearly allege that Defendants committed one or more of the predicate criminal acts enumerated in § 1961(1).

Rather, Plaintiffs provide in their opposition a conclusory list of alleged predicate criminal wrongdoings—presumably in light of Defendants' identification that Plaintiffs' Second Amended Complaint failed to do so—which merely asserts baldly that Defendants committed various crimes with no clear factual support.  *See* (ECF No. 54 at 35–37).  Second, most of the criminal acts alleged by Plaintiffs include charges of fraud for which Plaintiffs have not pled with particularity pursuant to Federal Rule of Civil Procedure 9(b).  Third, Plaintiffs have failed to plausible allege that Defendants collected an "unlawful debt" because their RICO claim is not premised on any payment request that could conceivably fall within the scope of § 1961(6).  Count III of Plaintiffs' Second Amended Complaint must therefore also be dismissed.

> 5. *The Additional Causes of Action Suggested in Plaintiffs' Opposition Are Subject to Dismissal*

Plaintiffs' opposition contains citations to additional statutes and regulations that did not form the basis of their Second Amended Complaint.  Despite the Court's obligation to liberally construe *pro se* pleadings, "[A] plaintiff is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint."  *White v. Howard Cmty. Coll.*, No. CV SAG-21-2274, 2021 WL 6064868, at *4 (D. Md. Dec. 22, 2021) (internal quotation omitted); *Shinabargar v. Bd. of Trustees of Univ. of D.C.*, 164 F. Supp. 3d 1, 32 n.16 (D.D.C. 2016) ("Even a *pro se* plaintiff may not circumvent the procedural rule, in Federal Rule of Civil Procedure 15(a), for amendment of claims, to bring an entirely new cause of action for the first time in response to the defendant's motion to dismiss.").

For instance, Plaintiffs repeatedly insert the phrase "commonality" within some of their factual allegations, seemingly in an attempt to have this lawsuit certified as a class action pursuant to Federal Rule of Civil Procedure 23.  The Court declines to do so because Plaintiffs have in no

way indicated their intent to proceed under Rule 23 prior to filing their opposition and because Plaintiffs have failed to demonstrate (or argue) the prerequisites of Rule 23 class certification.

Plaintiffs also devote some time to formulating a cause of action under the False Claims Act, 31 U.S.C. § 3729 ("FCA"). Specifically, Plaintiffs believe that Defendants violated the FCA by submitting fraudulent misrepresentations to Baltimore City officials in order to either bribe city inspectors from properly inspecting the Linden Park Apartments, demonstrate their compliance with applicable housing ordinances and regulations to obtain federal funding, or both. (ECF No. 54 at 18–20). The Court need not go into much analysis on this issue because the United States Supreme Court has provided two points of clarity regarding claims under the FCA: (1) "[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act"; and (2) "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192, 194 n.6 (2016). Plaintiffs have not plausibly alleged either and they therefore cannot maintain a cause of action under 31 U.S.C. § 3729.

Finally, Plaintiffs' opposition seemingly attempts to further flesh out an action under the Fair Debt Collection Practices Act ("FDCPA") because Plaintiffs believe that Defendant Habitat America, LLC is not licensed as a debt collector yet is responsible for collecting tenants' rent payments. (ECF No. 51 at 8; No. 54 at 8–9). The Court previously rejected this exact argument in *Ramsay v. Sawyer Property Management of Maryland, LLC*, in which it held that a property management company is not a debt collector for purposes of the FDCPA where a plaintiff fails to sufficiently allege that debt collection is the primary purpose of the property management

company.  948 F. Supp. 2d 525, 532–33 (D. Md. 2013).  Plaintiffs likewise have not done so in the instant case and they may not make out a FDCPA claim as a result.  *See also Brooks-McCollum v. Aspen Prop. Mgmt. Co.*, 551 F. App'x 677, 679–80 (4th Cir. 2014) (per curiam) (affirming dismissal of FDCPA claim against property management company because plaintiffs failed to plausibly allege that the property management company was a debt collector under the FDCPA); *Raburn v. Cmty. Mgmt., L.L.C.*, 761 F. App'x 263, 267 n.23 (5th Cir. 2019) (collecting cases highlighting that "numerous district courts [] have held that property management companies are not debt collectors" under the FDCPA).

## IV.    CONCLUSION

The Court previously explained that Plaintiffs' Amended Complaint placed it between a rock and a hard place because, although *pro se* complaints are owed liberal construction, Plaintiffs' Amended Complaint did not sufficiently indicate Plaintiffs' cause(s) of action and the facts plausibly demonstrating that those cause(s) weren't subject to dismissal.  Plaintiffs' Second Amended Complaint suffers from similar defects.  Plaintiffs' Second Amended Complaint more clearly enumerates specific claims.  However, Plaintiffs' Second Amended Complaint is still replete with confusing, conclusory "factual allegations" and citations to various local, state, and federal laws and regulations that do not plausibly allege any federal claim for which this Court can afford Plaintiffs relief.  The Court has attempted to construe Plaintiffs' Second Amended Complaint in the utmost liberal light, but the confusing nature of Plaintiffs' Second Amended Complaint makes it extremely challenging to identify every potential cause of action for which Plaintiffs seek redress, and/or the potential facts that support permitting those claims to proceed. And because Plaintiffs have not plausibly alleged any federal claims giving rise to federal question jurisdiction, the Court declines to assess the pleading sufficiency of any potential Maryland state

law claims.  Plaintiffs' motion (ECF No. 56) is therefore DENIED and Defendants' motion (ECF No. 52) is GRANTED.  As this was Plaintiffs' third attempt at submitting a viable complaint to no avail, the case is hereby dismissed with prejudice and the Clerk of the Court is asked to close it accordingly.


Date: <u>May 14, 2024</u>                                  <u>            /s/                        </u>

                                                            J. Mark Coulson
                                                            United States Magistrate Judge